DSS:SDD/MA
F. #2011R00783

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - -X

AGRON HASBAJRAMI

    - against -                    Civ. No. 13-6852 (JG)

UNITED STATES OF AMERICA,

           Defendant.

- - - - - - - - - - - - - - -X

MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE, SET
ASIDE OR CORRECT HIS CONVICTION AND SENTENCE

Matthew Amatruda
Seth D. DuCharme
Assistant United States Attorneys
    Of Counsel

PRELIMINARY STATEMENT

On April 12, 2012, petitioner Agron Hasbajrami pleaded guilty to one count of attempting to provide material support to terrorists, in violation of 18 U.S.C. § 2339A(a).  On January 8, 2013, the Court sentenced Hasbajrami to a 15-year term of incarceration, which the petitioner is currently serving. Following his sentence, Hasbajrami filed a pro se motion in case number 11 CR 623 (S1)(JG) seeking to vacate his conviction and sentence principally on the ground that Section 2339A is unconstitutionally vague.[1]  On December 4, 2013, the Court construed the motion as a habeas petition pursuant to 28 U.S.C. § 2255.  As set forth in greater detail below, the petitioner expressly waived his right to collaterally attack his conviction.  In addition, it is well-settled that the statute of conviction, 18 U.S.C. § 2339A, is not unconstitutionally vague.[2] Accordingly, the petition should be dismissed.

_____

1  On February 24, 2014, the government filed a supplemental notification letter in which the government indicated that it did not oppose the Court granting the petitioner additional time to amend or supplement his petition to raise additional grounds. As of the date of this filing, the petitioner has not supplemented his motion.

2  The petitioner also argues that counts of the indictment to which he did not plead guilty should be dismissed and that the statute is over broad because the designation of "co-conspirators" as a "foreign terrorist organization" is unconstitutional.  However, the petitioner was not charged under a terrorism statute relating to a foreign terrorist organization.  Rather, he was charged with, and pleaded guilty

2

<u>STATEMENT OF FACTS</u>

As the Court may recall, and as set forth in the Presentence Investigation Report ("PSR") as amended on October 5, 2012 in the underlying criminal matter, the petitioner's case arose from an investigation by agents of the Joint Terrorism Task Force ("JTTF"), which revealed that between April 2, 2011 and August 28, 2011 the petitioner communicated with a Pakistan-based extremist ("Individual #1") who informed the petitioner that he was part of a terrorist organization. (PSR ¶ 2). Individual #1, a foreign national whose identity is known to the parties, told the petitioner that his group was engaged in attacks on American soldiers in Afghanistan. In addition, Individual #1 promoted violent extremist activity through internet communications and publications, and solicited funds that he represented would be used to support terrorist operations. (<u>Id</u>.)

During the course of their communications, the petitioner sent approximately $1,000 to Individual #1 to support Islamic fundamentalist terrorist operations. In addition, the

---

to, providing material support to terrorists in violation of 18 U.S.C. § 2339A(a). Title 18, United States Code, Section 2339B, which is the statute criminalizing the provision of material support to a designated foreign terrorist organization, is not at issue in this case. In addition, Special Administrative Measures were not imposed on the petitioner in connection with this case, and thus his claims relating to those measures are baseless.

petitioner and Individual #1 planned for the petitioner's travel from New York to the Federally Administered Tribal Areas ("FATA") of Pakistan, where the petitioner hoped to join a jihadist fighting group.  (Id.)  During their communications, the petitioner discussed with Individual #1 his desire to "marry with the girls in paradise," that is, to die as a martyr while engaged in fighting a holy war.  (Id.)

Upon learning of the petitioner's communications with Individual #1, and discovering that the petitioner had lost contact with Individual #1 for a period of time, the government introduced a cooperating source ("CS") to the petitioner through online communications in order to determine whether the petitioner remained intent on supporting terrorism and joining a foreign fighter group abroad.  Through the use of the CS, the government learned that the petitioner was continuing to make efforts to support international terrorism, and in fact was pursuing his plans to travel from the United States to the Middle East and ultimately make his way to the FATA to join a foreign fighter group.

On September 6, 2011, JTTF agents arrested the petitioner at John F. Kennedy International Airport ("JFK") in Queens, New York, from where he was about to travel to Turkey en route to Pakistan.  (PSR ¶ 4).  Following his arrest and after

4

waiving his <u>Miranda</u> rights, the petitioner made detailed statements to agents regarding his offense conduct.

On September 8, 2011, a grand jury in this District returned an indictment charging the petitioner with one count of providing material support to terrorists, in violation of 18 U.S.C. § 2339A(a). On January 26, 2012, the grand jury returned a superseding indictment, which included three additional counts of providing and attempting to provide material support, consisting principally of money (some of which was to be used for weapons) and personnel, all in violation of that same statute.

On April 12, 2012, following discovery disclosures and plea negotiations, the petitioner pleaded guilty to Count Two of the superseding indictment, which charged him with attempting to provide material support to terrorists in violation of 18 U.S.C. § 2339A(a). The plea agreement expressly provided: "The defendant agrees not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 15 years or below." (Plea Agr. ¶ 4).

In his allocution, the petitioner stated:

> Between April 1, 2011 and September 6, 2011,
> I tried to help a group of people who I
> believed were engaged in fighting in
> Pakistan. I agreed with the group and
> attempted to help the group by providing

5

> money, and myself, in support of their
> efforts.  I obtained an Iranian visa and, on
> September 6, 2011, I went to JFK in Queens,
> New York in an effort to travel to [sic]
> Middle East in an effort to join the group.

(Plea Tr. 18-19).  At the plea proceeding, the Court confirmed

the petitioner's understanding that he was waiving his right to

challenge his conviction or sentence:

> THE COURT:  In your bargain with the
> government, you've given up your right to
> otherwise appeal any sentence or conviction,
> or challenge it in any other way, not just
> by appeal but by any legal way, as long as
> you don't get more than 15 years in jail,
> understood?
>
> THE PETITIONER:  Okay.

(Plea Tr. 15).  At sentencing on January 8, 2013, the Court

accepted the plea and imposed a sentence of 15 years'

imprisonment, noting that the Court may well have imposed a

higher sentence but for the statutory maximum.  (Sent. Tr.

34)(The Court remarked, " I think in order to accurately reflect

the seriousness of your conduct, a sentence would be greater

than 15 years in jail.  What you did is that serious a crime,

that worthy of condemnation.").  At the conclusion of

sentencing, the government moved to dismiss the open counts.

Following the imposition of the sentence, Hasbajrami

filed a pro se "motion to vacate, set aside or correct" his

conviction and sentence.  On December 4, 2013, the Court

6

construed the motion as a petition for a writ of habeas corpus
pursuant to 28 U.S.C. § 2255.

ARGUMENT

The petitioner seeks to vacate his conviction and
sentence principally on the ground that Section 2339A is
unconstitutionally vague.  Section 2255 provides that a prisoner
in custody under sentence of a court may move to vacate his
conviction and sentence "upon the ground that the sentence was
imposed in violation of the Constitution or laws of the United
States, or that the court was without jurisdiction to impose
such sentence, or that the sentence was in excess of the maximum
authorized by law, or is otherwise subject to collateral
attack."  28 U.S.C. § 2255.  In bringing such a motion, the
petitioner must show a constitutional or jurisdictional error or
"a fundamental miscarriage of justice."  McClesky v. Zant, 499
U.S. 467, 495 (1991).  Here, there has been no error and no
miscarriage of justice.  The petitioner's allocution and post
arrest statements, corroborated by electronic and physical
evidence, demonstrate his guilt.  In addition, the petitioner
expressly waived the right to challenge his conviction in his
plea agreement.  Finally, and at the heart of the petitioner's
challenge, the material support to terrorists statute is
constitutional on its face and as applied to the petitioner's

conduct.  Accordingly, the petition should be dismissed in its entirety.

> ### A. The Petitioner Expressly Waived His Right to
> ### Challenge His Conviction in his Plea Agreement

In his plea agreement with the government, the petitioner agreed "not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 15 years or below."  (Plea Agr. ¶ 4). Hasbajrami's petition should be rejected based on the waiver provision alone.

Plea agreements, such as the one at issue here, typically include provisions by which defendants waive the right to appeal or otherwise challenge their convictions and sentences.  It is well-settled that such waivers are enforceable against a collateral attack under Section 2255.  <u>Garcia Santos v. United States</u>, 273 F.3d 506, 509 (2d Cir. 2001)("We have long enforced waivers of direct appeal rights in plea agreements, even though the grounds for appeal arose after the plea agreement was entered into.  The reasons for enforcing waivers of direct appeal in such cases lead us to the same conclusion as to waivers of collateral attack under § 2255.")(internal citation omitted); <u>Ciriacos v. United States</u>, Nos. 11 CV 3078(HB), 09 CR 394(HB), 2012 WL 3599154, at *5 (S.D.N.Y. Aug.

22, 2012) ("Waivers of the right to collaterally attack a sentence are enforceable under the same conditions as waivers of the right to directly appeal."). As the Second Circuit has noted in affirming the enforcement of an appellate waiver:

> In no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless.

United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993).

Here, as the government explained in anticipation of sentencing and in support of the government's motion to accept the plea, the negotiated disposition appropriately balanced the seriousness of the petitioner's conduct against the litigation risks and burdens avoided through a plea. The petitioner's crimes were profoundly serious, so much so that the Court expressed at sentencing the inclination to sentence the petitioner to a term of imprisonment beyond the 15-year cap that resulted from pleading to a single count. On the other hand, had the government and the petitioner not reached a plea agreement, the Court and the petitioner would have been faced with the burdens of trial. Based on these considerations, the petitioner knowingly and voluntarily accepted the plea

agreement. Thus, the terms of the agreement barring this collateral attack on the petitioner's conviction and sentence should stand. See United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001) ("It is by now well established that a knowing and voluntary waiver of the right to appeal is generally enforceable."); United States v. Djelevic, 161 F.3d 104, 106 (2d Cir. 1998)(same). Accordingly, the petitioner has waived the right to challenge his conviction, and his claim should be rejected for this reason alone.

B. The Petitioner's Plea Was Knowing and Voluntary

Piggy-backing on the petitioner's void for vagueness claims are vaguely pleaded assertions that his waiver of the right to collaterally attack his conviction and sentence was not knowing and intelligent because defense counsel did not adequately investigate the charges against him. (Pet. at 4). The petitioner's claims are unsupported and are contradicted by the record.

As a general matter, a guilty plea extinguishes a defendant's claims relating to the deprivation of rights prior to the entry of the plea. Tollett v. Henderson, 411 U.S. 258, 267 (1973); United States v. Gregg, 463 F.3d 160, 164 (2d Cir. 2006). In sum, "a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the

10

case. . . .  A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established." Lugo v. Artus, No. 05 Civ. 1998, 2008 WL 312298, at *3 (S.D.N.Y. Jan. 31, 2008).

Thus, a habeas petitioner who has pleaded guilty to criminal charges "is not entitled to the vacating of his conviction on the basis of claimed antecedent constitutional infirmities . . . even assuming there is some factual basis for these allegations." Amparo v. Henderson, No. 86 Civ. 4310, 1989 WL 126831, at *1 (E.D.N.Y. Oct. 18, 1989).  In addition, the Supreme Court has held that a defendant is not entitled to disclosure of all information in the possession of the government prior to the entry of a plea.  United States v. Ruiz, 536 U.S. 622, 630 (2002) (noting that "the Constitution . . . does not require complete knowledge of the relevant circumstances").

As set forth above, the record is clear that the Court expressly informed the petitioner of the rights he was waiving during his plea allocution at a point in the case where the government had produced in discovery all of the key evidence on which the government intended to rely at trial in proving the petitioner's guilt.  Moreover, the government filed a letter

11

prior to sentencing in which the government explained the basis
for the plea in order to establish that the Court should accept
the plea under Federal Rule of Criminal Procedure 11(c)(3)(A)
and United States Sentencing Guidelines Section 6B1.1(c).  (Dkt.
#40).

        In sum, after reviewing the discovery materials and
engaging in extensive plea negotiations with the government,
the petitioner reached a resolution that capped his sentencing
exposure at 15 years – far below the effective Guidelines range
of 60 years' imprisonment had he proceeded to trial and been
convicted of all four counts.  Indeed, as noted above, the Court
remarked at sentencing that had the petitioner's sentence not
been capped at 15 years, the Court may well have imposed a
sentence far in excess of 15 years.

        In addition, to establish that his "counsel's
ineffectiveness and lack of due diligence in preparing a defense
[] led to Petitioner pleading to a charge that he is not truly
guilty of," as the petitioner's asserts, he faces a heavy burden
under the circumstances presented here.  (Pet. at 4).  "[T]o
prevail on an ineffective-assistance-of-counsel claim, a
defendant must show (1) that his attorney's performance fell
below an objective standard of reasonableness, and (2) that as a
result he suffered prejudice."  United States v. Jones, 482 F.3d
60, 76 (2d Cir. 2006) (citing Strickland v. Washington, 466 U.S.

12

668, 687 (1984)).  The two-prong <u>Strickland</u> standard is "highly
demanding," <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 382 (1986), and
applies to challenges to guilty pleas based on ineffective
assistance of counsel, <u>Hill v. Lockhart</u>, 474 U.S. 52, 58 (1985).

In assessing the reasonableness of counsel's
performance, judicial scrutiny "must be highly deferential" and
"must indulge a strong presumption that counsel's conduct falls
within the wide range of reasonable professional assistance."
<u>Strickland</u>, 466 U.S. at 689.  The reasonableness of counsel's
performance is to be evaluated from counsel's perspective at the
time of the alleged error, <u>Kimmelman</u>, 577 U.S. at 381, "bearing
in mind that '[t]here are countless ways to provide effective
assistance in any given case' and that '[e]ven the best criminal
defense attorneys would not defend a particular client in the
same way,'" <u>United States v. Aguirre</u>, 912 F.2d 555, 560 (2d Cir.
1990) (quoting <u>Strickland</u>, 466 U.S. at 689).  Here, the record
demonstrates that defense counsel ably negotiated a resolution
to the petitioner's case that reduced his sentencing exposure
from 60 years' imprisonment to 15 years' imprisonment (to which
he was sentenced), and that counsel did so after a careful
review of the materials produced in discovery and the nature of
the charges.  Indeed, the government explained the basis for the
plea agreement in its sentencing submission and the Court

reviewed the terms of the plea agreement and the rights that the petitioner was waiving at the time of his plea.

Under the circumstances presented here, defense counsel's litigation strategy in negotiating the petitioner's plea can hardly be construed as ineffective assistance of counsel.  The petitioner has not provided any evidence or specific factual allegation to support his claim that, had he been more fully advised in some respect, he would not have pleaded guilty.  Moreover, there is no evidence that he was likely to be acquitted or face a shorter sentence after trial. See, e.g., United States v. Frederick, 526 Fed. Appx. 91, 93 (2d Cir. 2013), 2013 WL 1846474 at *1 (summary order) (in order to show prejudice in the context of a plea negotiation, the petitioner must show "that he would have accepted or rejected a plea agreement but for his counsel's deficient performance and . . . some additional 'objective evidence' supporting his claim." (quoting United States v. Gordon, 156 F.3d 376, 381 (2d Cir. 1998)); Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003) (same); Holman v. Ebert, No. 06-CV-3618, 2007 WL 4591718, at *5 (E.D.N.Y. Dec. 28, 2007) ("To satisfy the prejudice element of the Strickland test in the context of a guilty plea, petitioner would have to show that he would have been acquitted or at least received a shorter sentence after conviction."); see also Shotts v. Wetzel, 724 F.3d 364 (3d Cir. 2013) (denying the claim that

14

counsel was ineffective for failing to conduct discovery prior to guilty plea because the preliminary investigation was an objectively reasonable strategic choice in light of the defendant's "pretty substantial confession" and wish to avoid trial).

Here, the petitioner has not presented any evidence to corroborate his claim that, but for counsel's alleged deficiency, he would not have pleaded guilty. In fact, as set forth above, the petitioner's claim is contradicted by the record at the guilty plea and at sentencing. Defense counsel was not ineffective in resolving the petitioner's case by a negotiated disposition that substantially reduced his sentencing exposure, and the quality of the petitioner's representation does not undermine the knowing and intelligent nature of the petitioner's plea.

C. <u>Section 2339A Is Not Unconstitutionally Vague</u>

The statute at issue in this case is not unconstitutionally vague on its face or as applied to the petitioner's offense conduct. "The void-for-vagueness doctrine derives from the constitutional guarantee of due process. . . ." <u>Mannix v. Phillips</u>, 619 F.3d 187, 197 (2d Cir. 2010). "A conviction fails to comport with due process if the statute under which it was obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is

15

so standardless that it authorizes or encourages seriously discriminatory enforcement." Holder v. Humanitarian Law Project, 130 S.Ct. 2705, 2718, (2010) (internal quotation marks omitted).

When a statute is challenged on an as-applied basis, "one whose conduct is clearly proscribed by the statute cannot successfully challenge it for vagueness." United States v. Nadi, 996 F.2d 548, 550 (2d Cir. 1993); see also Thibodeau v. Portuondo, 486 F.3d 61, 69 (2d Cir. 2007) ("Even assuming, arguendo, that the statute did not provide sufficient objective, explicit criteria to prevent arbitrary enforcement, the statute as applied to [petitioner] would not be unconstitutionally vague because the conduct to which the statute was applied falls within the 'core meaning' of the statute.").

Section 2339A(a) criminalizes providing or attempting to provide "material support or resources . . . knowing or intending that they are to be used in preparation for, or in carrying out" any predicate offense set forth in the statute. Section 956(a)(1), the predicate offense supporting the charge to which the petitioner pleaded guilty, provides as follows: "Whoever, within the jurisdiction of the United States, conspires with one or more other persons, regardless of where such other person or persons are located, to commit at any place outside the United States an act that would constitute the

16

offense of murder, kidnapping, or maiming . . . shall . . . be punished . . . ." 18 U.S.C. § 956(a)(1).[3]  Section 2339A expressly defines "material support" to include "currency or monetary instruments" and "personnel (1 or more individuals who may be or include oneself)." 18 U.S.C. § 2339A(b).

As the petitioner admitted during his allocution, he knowingly and intentionally attempted to provide money and personnel (i.e., himself) to commit murder abroad in support of a violent jihadist group.  (Plea Tr. 18-19).  The petitioner's vagueness challenge fails because Section 2339A clearly applied to his conduct.  Knowingly attempting to provide financing and oneself to fight on behalf of violent jihadists implicates the "core meaning" of Section 2339A.  See United States v. Awan, 384 Fed. Appx. 9, 16 (2d Cir. 2010), 2010 WL 2348649 at *5 (rejecting defendant's vague as applied challenge to § 2339A, and holding the meaning of "personnel" to be sufficiently clear as applied); United States v. Stewart, 590 F.3d 93, 99 (2d Cir. 2009)(holding that "We conclude that the charges were valid — that 18 U.S.C. § 2339A is neither unconstitutionally vague as applied nor a 'logical absurdity,' as Stewart asserts—and that the evidence was sufficient to sustain the convictions."); see

---

3   Count Two identified two predicate offenses related to the attempted violation of Section 2339A: Section 956 (to which the defendant pleaded guilty) and Section 2332(b) (conspiracy to kill United States nationals).

also Humanitarian Law Project, 130 S. Ct. at 2720 (rejecting the

argument that the definition of "personnel" set forth in 18

U.S.C. § 2339B(h) was unconstitutionally vague).[4]

The Second Circuit recently rejected a defendant's

post-trial challenge that his conviction for providing material

support to terrorists under 18 U.S.C. § 2339B should be

overturned because that statute was unconstitutionally vague as

applied.  United States v. Mustafa, 406 Fed. Appx. 526, 530,

2011 WL 159527 at *3 (2d Cir. 2011).  There, the court stated

that the defendant's as-applied challenge to Section 2339B

failed "[i]n light of the Supreme Court's decision in Holder v.

Humanitarian Law Project," ruling that the defendant's

"challenge fail[ed] because 2339B applie[d] clearly to his

conduct."  Id. at 530.  See also United States v. Kassir, No. 04

Cr. 356(JFK), 2009 WL 2913651, at *9 (S.D.N.Y. Sept. 11, 2009)

(rejecting a vagueness as-applied challenge to 18 U.S.C. § 2339B

and holding that "knowingly providing jihad training to young

men and disseminating training manuals online for the benefit

---

4  As noted above, 18 U.S.C. § 2339A proscribes "providing
material support to terrorists," knowing or intending that it
will be used in preparation for or in carrying out a
specifically listed predicate offense.  Section 2339B proscribes
the provision of material support to a foreign terrorist
organization that has been specifically designated as such under
Section 219 of the Immigration and Nationality Act.  Both
sections incorporate identical definitions of "material support
or resources," including currency and personnel.  See 18 U.S.C.
§ 2339B(g)(4).

[sic] al Qaeda implicates the 'core meaning' of a statute that proscribes knowingly providing 'training' and 'expert advice or assistance' to a foreign terrorist organization").

A person of "ordinary intelligence" would know that the conduct in which the petitioner attempted to participate was proscribed by Section 2339A.  The petitioner sent funds to support a jihadist who had advised the petitioner that the money would be used to support attacks against United States forces.  He was arrested en route to join that fighting group.  See Mustafa at 530 (finding that a person of ordinary intelligence would know that training aspiring jihadists and creating and maintaining websites that host training manuals, propaganda, and instructions for making weapons and explosive devices is clearly prohibited by 2339B)(citing Linares Huarcaya v. Mukasey, 550 F.3d 224, 231 (2d Cir. 2008) (per curiam). Thus, the petitioner's conduct was clearly proscribed by the statute.

Finally, to the extent that the petitioner challenges the constitutionality of Section 2339A on its face, where such a claim does not implicate First Amendment protected conduct,[5] courts have taken two different approaches in determining facial

_____

5  First Amendment issues are not present in the context of Section 2339A where, as here, the predicate offense involves violence such as a conspiracy to commit murder in a foreign country.  United States v. Sattar, 314 F. Supp. 2d 279, 301 (S.D.N.Y. 2004).

vagueness: "(1) whether the statute is 'unconstitutionally vague as applied to all circumstances' or (2) whether, even though there may be some circumstances in which the statute can be validly applied, it 'is permeated with vagueness,' which may require a finding 'that it infringes on a constitutional right and has no <u>mens</u> <u>rea</u> requirement.'" <u>United States v. Awan</u>, 459 F. Supp. 2d 167, 179 (E.D.N.Y. 2006).  Section 2339A is not facially vague under either of these approaches.  <u>Id</u>. at 180. The scienter requirement of § 2339A(a) "makes clear both what is illegal and what intent a suspect must possess before his activities are defined as criminal."  The text of the statute is not "permeated" with vagueness.  <u>Id</u>.  Additionally, the fact that the statute has been found to not be vague as-applied supports the conclusion that it is not vague in every circumstance.  <u>Id</u>; <u>see</u> <u>also</u> <u>Stewart</u>, 590 F.3d at 99.  Accordingly, the petitioner's claim should be denied.

<u>CONCLUSION</u>

For the foregoing reasons, the petition should be dismissed in its entirety.

## CERTIFICATE OF SERVICE

On February 28, 2014 I caused to be mailed a copy of this brief to petitioner Agron Hasbajrami, 65794-053, FCI Fairton, P.O. Box 420, Fairton, NJ 08320.

_____/s/_____
Seth D. DuCharme
Assistant U.S. Attorney