EMN:SDD
F.#2011R00783

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X


AGRON HASBAJRAMI

  - against -                                    13 CV 6852 (JG)

UNITED STATES OF AMERICA,

                Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - X


<u>MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL DISCOVERY</u>

LORETTA E. LYNCH
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Seth D. DuCharme
Assistant U.S. Attorney
(Of Counsel)

JOHN P. CARLIN
Assistant Attorney General
For National Security

Alexis Collins
Trial Attorney
Counterterrorism Section
U.S. Department of Justice

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ............................................................................. 1

I.      BACKGROUND ........................................................................................ 4

II.     APPLICABLE LAW .................................................................................. 8

        A.      The Foreign Intelligence Surveillance Act ............................................ 9

        B.      Collateral Proceedings under 28 U.S.C. § 2255 ................................. 10

                1.      A Section 2255 Petitioner Must Show That The Discovery
                        He Seeks Would Establish a Legal Claim That Would Entitle
                        Him To Relief ........................................................................... 10

                2.      Effect of Guilty Plea ................................................................. 12

        C.      Discovery Standards ........................................................................ 13

ARGUMENT ........................................................................................................ 14

I.      HASBAJRAMI HAS NO RIGHT TO DISCOVERY ON COLLATERAL ATTACK.... 14

        A.      Hasbajrami has not raised a substantive claim. ................................... 15

        B.      Hasbajrami would not be entitled to relief based on the discovery
                he seeks ........................................................................................ 16

                1.      Hasbajrami's Guilty Plea Forecloses His Constitutional and
                        Statutory Challenges to the Legality of the Section 702 Collection ........ 17

                2.      The Discovery Hasbajrami Seeks Relating to the Supplemental
                        Notification Does Not Implicate the Validity of his Plea ......................... 20

II.     HASBAJRAMI CANNOT JUSTIFY DISCLOSURE OF THE REQUESTED
        MATERIALS ON ANY OTHER BASIS ........................................................... 24

        A.      Hasbajrami fails to establish government misconduct .......................... 24

        B.      The timing of the Supplemental Notification is not indicative of bad faith. ........ 25

III.    THE MATERIALS HASBAJRAMI SEEKS ARE PROTECTED BY THE ATTORNEY
        CLIENT AND
        DELIBERATIVE PROCESS PRIVILEGES ................................................... 31

IV.     THERE IS NO BASIS TO ORDER DISCOVERY OF CLASSIFIED MATERIALS
        RELATING TO THE
        AUTHORIZATION OR EXECUTION OF SECTION 702 COLLECTION BECAUSE
        THE LAWFULNESS
        OF THE COLLECTION IS NOT BEFORE THE COURT ........................................... 33

V.      DEFENSE COUNSEL'S SECURITY CLEARANCES ARE NOT A DETERMINATIVE
        OR LAWFUL
        BASIS UPON WHICH TO PROVIDE THE REQUESTED DISCOVERY .................. 36

VI.     HASBAJRAMI'S SWEEPING ALLEGATIONS RELATING TO GOVERNMENT
        SURVEILLANCE
        PROGRAMS ARE NOT GROUNDED IN THE RECORD........................................... 38

CONCLUSION ................................................................................................................. 39

## TABLE OF AUTHORITIES

Page

### Cases

Amparo v. Henderson,
No. 86 Civ. 4310, 1989 WL 126831 ................................................................. 12

Beatty v. Greiner,
50 Fed. Appx. 494 (2d Cir. 2002) ..................................................................... 12

Bousley v. United States,
523 U.S. 614 (1998) ......................................................................................... 22

Bracy v. Gramley,
520 U.S. 899 (1997) .............................................................................. 10, 14, 22

Brady v. Maryland,
373 U.S. 83 (1963) ........................................................................................... 13

Clapper v. Amnesty Int'l USA,
133 S. Ct. 1138 (2013) ..................................................................................... 28

Clark v. Johnson,
202 F.3d 760 (5th Cir. 2000) ........................................................................... 11

Czernicki v. United States,
270 F. Supp. 2d 391 (S.D.N.Y. 2003) .............................................................. 19

Davis v. United States,
131 S. Ct. 2419 (2011) ..................................................................................... 35

Deputy v. Taylor,
19 F.3d 1485 (3rd Cir.1994) ............................................................................ 11

Ferrara v. United States,
384 F. Supp. 2d 384 (D. Mass. 2005) ............................................................... 12

Giglio v. United States,
405 U.S. 150 (1972) .......................................................................................... 13

Graziano v. United States,
83 F.3d 587 (2d Cir. 1996) ............................................................................... 17

Haring v. Prosise,
462 U.S. 306 (1983) .......................................................................................... 18

Harris v. Johnson,
81 F.3d 535 (5th Cir.1996) ............................................................................... 11

Harris v. Nelson,
    394 U.S. 286 (1969) ................................................................................................ 10

Hill v. Johnson,
    210 F.3d 481 (5th Cir. 2000) ................................................................................. 11

Hubanks v. Frank,
    392 F.3d 926 (7th Cir. 2004) ................................................................................. 11

In re Directives Pursuant to Section 105B of the Foreign Intelligence Surveillance Act,
    551 F.3d 1004 (FISC Ct. Rev. 2008) .................................................................... 30

In re Sealed Case,
    121 F.3d 729 (D.C. Cir. 1997) ............................................................................... 31

Lugo v. Artus,
    No. 05 Civ. 1998 (SAS), 2008 WL 312298 (S.D.N.Y. Jan. 31, 2008) ................... 12

Murphy v. Johnson,
    205 F.3d 809 (5th Cir. 2000) ................................................................................. 11

Newton v. Kemna,
    354 F.3d 776 (8th Cir. 2004) ........................................................................... 11, 17

Puglisi v. United States,
    586 F.3d 209 (2d Cir. 2009) .................................................................................. 15

Rich v. Calderon,
    187 F.3d 1064 (9th Cir. 1999) ............................................................................... 11

Ricketts v. Adamson,
    483 U.S. 1 (1987) .................................................................................................... 20

Rosa v. United States,
    170 F. Supp. 2d 388 (S.D.N.Y. 2001) ................................................................... 19

Smith v. United States,
    876 F.2d 655 (8th Cir. 1989) ................................................................................. 18

Stanford v. Parker,
    266 F.3d 442 (6th Cir. 2001) ................................................................................. 11

Stone v. Powell,
    428 U.S. 465 (1976) ................................................................................................ 17

Strickler v. Greene,
    527 U.S. 263 (1999) ................................................................................................ 30

Tate v. Wood,
    963 F.2d 20 (2d Cir. 1992) ............................................................................... 30, 35

Teague v. Lane,
   489 U.S. 288 (1989) ................................................................................... 17

Tobon v. United States,
   132 F. Supp. 2d 164 (S.D.N.Y. 2001) ...................................................... 19

Tollett v. Henderson,
   411 U.S. 258 (1973) ............................................................................. 12, 17

United States v. Abu Jihaad,
   630 F.3d 102 (2d Cir. 2010) ...................................................................... 36

United States v. Abu-Jihaad,
   2007 WL 2972623 (D. Conn. Oct. 11, 2007) ........................................... 37

United States v. Amawi,
   2009 WL 961143 (N.D. Ohio, Apr. 7, 2009) ............................................ 37

United States v. Arango,
   966 F.2d 64 (2d Cir. 1992) ........................................................................ 18

United States v. Arenas-Ortiz,
   339 F.3d 1066 (9th Cir. 2003) ............................................................. 13, 29

United States v. Armstrong,
   517 U.S. 456 (1996) ................................................................................... 13

United States v. Bin Laden,
   126 F. Supp. 2d 264 (S.D.N.Y. 2000) ...................................................... 37

United States v. Bradley,
   400 F.3d 459 (6th Cir. 2005) .................................................................... 16

United States v. Broce,
   488 U.S. 563 (1989) ............................................................. 17, 18, 20, 21

United States v. Daoud,
   755 F.3d 479 (7th Cir. 2014) .................................................................... 36

United States v. Duggan,
   743 F.2d 59 (2d Cir. 1984) .................................................................. 14, 34

United States v. El-Mezain,
   664 F.3d 467 (5th Cir. 2011) ......................................................... 14, 34, 37

United States v. Fernandez,
   231 F.3d 1240 (9th Cir. 2000) .................................................................. 31

United States v. Fisher,
   711 F.3d 460 (4th Cir. 2013) ............................................................... 13, 22

United States v. Gale,
    314 F.3d 1 (D.C. Cir. 2003) ........................................................................... 23, 24

United States v. Ghailani,
    751 F. Supp. 2d 498 (S.D.N.Y. 2010) .............................................................. 31, 32

United States v. Gregg,
    463 F.3d 160 (2d Cir. 2006) ................................................................................. 12

United States v. Lee,
    523 F.3d 104 (2d Cir. 2008) ................................................................................. 19

United States v. Leyland,
    277 F.3d 628 (2d Cir. 2002) ................................................................................. 20

United States v. Libby,
    429 F. Supp. 2d 18 (D.D.C. 2006) ....................................................................... 37

United States v. Mahaffy,
    693 F.3d 113 (2d Cir. 2012) ................................................................................. 30

United States v. McLean,
    419 Fed. Appx. 473 (5th Cir. 2011) ..................................................................... 21

United States v. Mohamud,
    , Cr. No. 3:10-00475 (KI) 2014 WL 2866749 (D. Or. June 24, 2014) ............................ passim

United States v. Nicholson,
    721 F.3d 1236 (10th Cir. 2013) ............................................................................ 35

United States v. Ott,
    827 F.2d 473 (9th Cir. 1987) ................................................................................ 37

United States v. Pappas,
    94 F.3d 795 (2d Cir 1996) ................................................................................... 36

United States v. Reynolds,
    345 U.S. 1 (1953) ................................................................................................. 32

United States v. Ruiz,
    536 U.S. 622 (2002) ................................................................................ 12, 19, 21

United States v. Selby,
    476 F.2d 965 (2d Cir. 1973) ................................................................................. 18

United States v. Sykes,
    697 F.2d 87 (2d Cir. 1983) ................................................................................... 18

United States v. Wilson,
    901 F.2d 378 (4th Cir. 1990) ............................................................................... 12

United States v. Yousef,
   327 F.3d 56 (2d Cir. 2003) ........................................................ 37

## Statutes

18 U.S.C. § 2332a(a)(2)(A) ........................................................ 25

18 U.S.C. § 2339A ........................................................ 15

18 U.S.C. § 2339A(a) ........................................................ 1, 5, 6

18 U.S.C. § 3500 ........................................................ 13

18 U.S.C. §§ 2510-2522 ........................................................ 27

18 U.S.C. App. 3 ........................................................ 35

28 U.S.C. § 2255 ........................................................ passim

50 U.S.C. § 1801(k) ........................................................ 9

50 U.S.C. § 1825(d) ........................................................ 9

50 U.S.C. § 1881a ........................................................ 7, 9

50 U.S.C. § 1881a(a) ........................................................ 9

50 U.S.C. § 1881a(b) ........................................................ 9

50 U.S.C. § 1881e(a) ........................................................ 10, 34

50 U.S.C. §§ 1801-1812 ........................................................ 5

50 U.S.C. §§1806(c) ........................................................ 7, 8, 9

50 U.S.C. §1806(e) ........................................................ 10, 26, 35

50 U.S.C. 1806(f) ........................................................ 10, 13, 23, 34

PRELIMINARY STATEMENT

On April 12, 2012, petitioner/defendant Agron Hasbajrami ("Hasbajrami") pleaded guilty to one count of attempting to provide material support to terrorists, in violation of 18 U.S.C. § 2339A(a).   On January 8, 2013, the Court sentenced Hasbajrami to a 15-year term of incarceration, which he is currently serving.   Thereafter, Hasbajrami filed a pro se motion seeking to vacate his conviction and sentence, principally on the ground that Section 2339A is unconstitutionally vague.   The government responded and, on February 24, 2014, provided supplemental notification (the "Supplemental Notification") based on a post-plea determination by the Department of Justice (the "Department") and the prosecutors that certain evidence or information obtained or derived from Title I and Title III collection under the Foreign Intelligence Surveillance Act ("FISA") in Hasbajrami's criminal case was itself also derived from other collection pursuant to Section 702 of Title VII of FISA, codified through the FISA Amendments Act of 2008 ("FAA"), as to which Hasbajrami was aggrieved.   In that notification, the government stated that it did not oppose modifying the existing briefing schedule to permit Hasbajrami to amend his Section 2255 petition.

Rather than filing an amended petition, on June 30, 2014, Hasbajrami filed a motion for discovery, seeking, inter alia, materials which he expressly agreed to forego in his plea agreement and to which he is not otherwise entitled.   In sum, he primarily seeks three broad categories of materials: (1) information and records regarding a purported Department policy of non-disclosure of the use of Section 702 information and the circumstances underlying the provision of the Supplemental Notification in this case (Def's Mot. at 9-10); (2) classified factual information relating to the Title I/III and Section 702 collection relevant to his case, including all FISA applications, orders and related materials and their content and the government's opinion on

1

the legality of the Section 702 collection (id. at 8-10); and, based on newspaper articles regarding surveillance activities that have been the subject of recent public debate due to the unauthorized disclosure of classified information, (3) discovery of additional materials relating to the use of such investigative tools that he baselessly speculates may have been used against him but that otherwise have nothing to do with the Supplemental Notification (id. at 36-42).[1]

Hasbajrami argues that discovery of the Department's internal deliberative records is required in order to discern an appropriate remedy for the late Supplemental Notification. (Id. at 21-27.) With respect to his request for information regarding the FISA collection, he claims that access is required in order to: (1) determine whether Hasbajrami's plea was voluntary and whether it would benefit Hasbajrami to seek to withdraw his guilty plea (id. at 6, 27); and (2) support a potential argument that Hasbajrami may make challenging the legality of the underlying Section 702 collection (id. at 30-36). He further argues that the Court should order the government to produce any classified materials to cleared defense counsel due to the "complexity" of the case and should grant "the broadest discovery" because of "important societal purposes of transparency and deterrence." (Id. at 42-66.) Although he has not filed a substantive claim with respect to his guilty plea, Hasbajrami nonetheless argues that waivers contained in his plea agreement are unenforceable due to "institutional complicity" and Constitutional principles. (Id. at 69.)

To be clear, Hasbajrami has not moved to withdraw his guilty plea, but rather wishes to engage in a fishing expedition driven by vague and unsupportable allegations of government misconduct. To obtain discovery in a Section 2255 proceeding, a petitioner must make a prima facie showing that, if discovery were allowed, he could satisfy each element of his

---

[1] The defendant asserts that his discovery request should extend beyond the U.S. Attorney's Office to include other U.S. government entities.

claim for relief and defeat any procedural bars that would prevent the court from reaching the merits of his claim.   For the reasons set forth below, Hasbajrami cannot make that showing.

First, Hasbajrami has not yet raised any substantive claim of error related to the discovery he seeks.   The principal claim that he has yet raised – a constitutional challenge to Section 2339A – has nothing to do with any of the discovery requests in the instant motion. Hasbajrami's argument that he should get discovery up front to help him decide whether to raise additional claims is the kind of speculative "fishing expedition" request that courts have routinely rejected in collateral proceedings.

Second, even if Hasbajrami could properly obtain discovery to support claims he has not raised, his motion would still be meritless.   A petitioner's unconditional guilty plea forecloses any collateral claims based on alleged constitutional or statutory violations that occurred before the guilty plea.   Accordingly, Hasbajrami may not obtain discovery of materials related to the conduct of the Section 702 collection in this case, because his guilty plea forecloses any potential claims asserting constitutional or statutory violations arising from that collection. The only potential claim identified in Hasbajrami's motion that is not foreclosed is a challenge to the voluntariness of his plea.   But even if he had filed a petition seeking to set aside his guilty plea, Hasbajrami would still not be entitled to receive the discovery he seeks, because neither internal deliberative documents regarding the provision of Section 702 notice in this or any other case nor information relating to the legality of the underlying FISA collection would assist in establishing that claim.

To the extent Hasbajrami believes he has suffered prejudice from the delay in issuing the Supplemental Notification, his legal recourse is to move to vacate his guilty plea. While the government does not believe such a motion would be meritorious, should the Court

grant such a motion, Hasbajrami would be in the same place in his case as he would have been in had the Supplemental Notification been provided before his plea.   That is, he would then have the same opportunity to seek suppression of evidence and/or discovery as would any other criminal defendant who received a FISA notice.   The plea agreement conveyed benefits to both the government and Hasbajrami.   Litigating the legality of the FISA collection now, as Hasbajrami essentially requests, would extinguish the benefits that inured to the government under the terms of the plea.   If he wants to engage in such litigation, Hasbajrami must abandon the benefits he derived under the plea agreement.

I.      BACKGROUND

As set forth in the Presentence Investigation Report ("PSR"), Hasbajrami's case arose from an investigation by agents of the Joint Terrorism Task Force ("JTTF"), which revealed that between April 2, 2011 and August 28, 2011 Hasbajrami communicated with a Pakistan-based extremist ("Individual #1") who informed Hasbajrami that he was part of a terrorist organization. (PSR ¶ 2).   Individual #1, a foreign national whose identity is known to the parties, told Hasbajrami that his group was engaged in attacks on American soldiers in Afghanistan.   In addition, Individual #1 promoted violent extremist activity through Internet communications and publications, and solicited funds that he represented would be used to support terrorist operations. (Id.)

During the course of their communications, Hasbajrami sent approximately $1,000 to Individual #1 to support Islamic fundamentalist terrorist operations.   In addition, Hasbajrami and Individual #1 planned for Hasbajrami's travel from New York to the Federally Administered Tribal Areas ("FATA") of Pakistan, where Hasbajrami hoped to join a jihadist fighting group. (Id.)   During their communications, Hasbajrami discussed with Individual #1 his desire to "marry with the girls in paradise," that is, to die as a martyr while engaged in fighting a holy war.   (Id.)

4

The government introduced a cooperating source ("CS") to Hasbajrami through online communications in order to determine whether Hasbajrami remained intent on supporting terrorism and joining a foreign fighter group abroad.   Through the use of the CS, the government learned that Hasbajrami was continuing to make efforts to support international terrorism, and in fact was pursuing his plans to travel from the United States to the Middle East and ultimately make his way to the FATA to join a foreign fighter group.

On September 6, 2011, JTTF agents arrested Hasbajrami at John F. Kennedy International Airport ("JFK") in Queens, New York, from where he was about to travel to Turkey en route to Pakistan.   (PSR ¶ 4).   Following his arrest and after waiving his Miranda rights, Hasbajrami made detailed statements to agents regarding his offense conduct.

On September 8, 2011, a grand jury in this District returned an indictment charging Hasbajrami with one count of providing material support to terrorists, in violation of 18 U.S.C. § 2339A(a).   On September 13, 2011, the government filed notice of its intent to use or disclose, in the prosecution of Hasbajrami, information obtained or derived from electronic surveillance (Title I) and physical search (Title III) conducted pursuant to FISA, 50 U.S.C. §§ 1801-1812, 1821-1829. (ECF No. 9).   Thereafter, the government produced in discovery inculpatory evidence, including email communications between Hasbajrami and Individual #1, some of which evidence and information had been obtained pursuant to FISA.   On January 26, 2012, the grand jury returned a superseding indictment, which included three additional counts of providing and attempting to provide material support, consisting principally of money (some of which was to be used for weapons) and personnel, all in violation of that same statute.

On April 12, 2012, following discovery disclosures (including a classified Brady disclosure) and plea negotiations, Hasbajrami pleaded guilty to Count Two of the superseding

5

indictment, which charged him with attempting to provide material support to terrorists in

violation of 18 U.S.C. § 2339A(a).   The plea agreement expressly provided: "The defendant

agrees not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any

other provision, the conviction or sentence in the event that the Court imposes a term of

imprisonment of 15 years or below. . . .   The defendant waives any right to additional disclosure

from the government in connection with the guilty plea."   (Plea Agr. ¶ 4).

> In his allocution, Hasbajrami stated:
>
> Between April 1, 2011 and September 6, 2011, I tried to help a
> group of people who I believed were engaged in fighting in
> Pakistan.   I agreed with the group and attempted to help the group
> by providing money, and myself, in support of their efforts.   I
> obtained an Iranian visa and, on September 6, 2011, I went to JFK in
> Queens, New York in an effort to travel to Middle East in an effort
> to join the group.

(Plea Tr. 18-19).   Thus, there is no question as to Hasbajrami's factual guilt.   At the plea

proceeding, the Court confirmed Hasbajrami's understanding that he was waiving his right to

challenge his conviction or sentence:

> THE COURT:   In your bargain with the government, you've given
> up your right to otherwise appeal any sentence or conviction, or
> challenge it in any other way, not just by appeal but by any legal
> way, as long as you don't get more than 15 years in jail, understood?
>
> HASBAJRAMI:   Okay.

(Plea Tr. 15).   At sentencing on January 8, 2013, the Court accepted the plea and imposed a

sentence of 15 years' imprisonment, noting that the Court may well have imposed a higher

sentence but for the statutory maximum.   (Sent. Tr. 34) (The Court remarked, "I think in order to

accurately reflect the seriousness of your conduct, a sentence would be greater than 15 years in jail.

What you did is that serious a crime, that worthy of condemnation.").   At the conclusion of

sentencing, the government moved to dismiss the open counts, as it was obligated to do by the

6

terms of the plea agreement.

Following the imposition of the sentence, Hasbajrami filed a pro se "motion to vacate, set aside or correct" his conviction and sentence, which on December 4, 2013 the Court deemed a motion under Section 2255 in case number 13 CV 6852.   Thereafter, as explained further below, the Department determined that information obtained or derived from Title I or Title III FISA collection may, in particular cases, also be derived from prior Title VII collection, such that notice concerning both Title I/III and Title VII collections should be given in appropriate cases with respect to the same information.   Following this determination, upon reviewing the evidence obtained or derived from Title I or Title III FISA collection in Hasbajrami's case and determining that certain evidence was itself also derived from other collection pursuant to Section 702 as to which Hasbajrami was aggrieved, the government provided the Supplemental Notification.   The Supplemental Notification stated that, pursuant to 50 U.S.C. §§1806(c) and 1881e(a), the government intended to offer into evidence or otherwise use or disclose in proceedings in Hasbajrami's criminal case information derived from acquisition of foreign intelligence information conducted pursuant to Section 702, 50 U.S.C. § 1881a.   (ECF No. 65). On June 30, 2014, Hasbajrami filed the instant discovery motion.

7

II.     APPLICABLE LAW

   While Hasbajrami's pending motion purports to be a motion for discovery, it implicates several important areas of substantive law relating to the authority by which the government may obtain foreign intelligence information and use FISA and FAA Section 702 obtained or derived evidence, as well as the propriety of the government's conduct in this and other national security cases.   Notably, many of the defendant's same claims were very recently addressed and rejected by the district court in United States v. Mohamud, , Cr. No. 3:10-00475 (KI) 2014 WL 2866749 (D. Or. June 24, 2014).   Mohamud is directly on point, for example, as to Hasbajrami's various claims about the purported existence of "secret" government notice policies as well as the constitutionality of Section 702, and is a well-reasoned decision worthy of this Court's consideration in its entirety.[2]

   In addition to the analysis set forth in Mohamud, the basic principles and authorities that relate to the instant motion are summarized below, and discussed in greater detail in the context of Hasbajrami's specific arguments.

---

  [2]   Because Mohamud involved the provision of Section 702 notice after trial, but before sentencing, the district court also addressed the availability of FISA's suppression remedy in such circumstances.   In Mohamud, the district court recognized that, when enacting the FISA statute, Congress opted to provide the single remedy of suppression when the government unlawfully acquires evidence under the statute, and held that suppression is also the sole remedy when notice is untimely.   Mohamud, 2014 WL 2866749 at *3.   The district court also recognized that FISA "even anticipates a suppression motion may be filed after trial: 'Such a motion shall be made before the trial . . . unless . . . the person was not aware of the grounds of the motion.'"   Id. (citing 50 U.S.C. § 1806(c)).   While Fourth Amendment claims for suppression of evidence are not cognizable in a Section 2255 proceeding as explained herein, Hasbajrami would be able to seek a suppression remedy if his guilty plea were vacated.

8

A.     The Foreign Intelligence Surveillance Act

Foreign intelligence information may be collected pursuant to traditional authority under FISA (e.g. Title I electronic surveillance and Title III physical search), as well as through means authorized by the FISA Amendments Act of 2008, or "FAA."   Section 702 of Title VII of FISA permits the targeting of electronic communications of non-U.S. persons located outside of the United States, subject to certain statutory requirements.   50 U.S.C. § 1881a.   Section 702 provides that "upon the issuance" of an order from the Foreign Intelligence Surveillance Court ("FISC"), "the Attorney General and the Director of National Intelligence may authorize jointly, for a period of up to 1 year . . . the targeting of persons reasonably believed to be located outside the United States to acquire foreign intelligence information."   50 U.S.C. § 1881a(a).   Collection under this section is subject to numerous statutory requirements and extensive oversight, including inter alia a finding by the FISC that the procedures governing targeting decisions and the use and dissemination of the information that is obtained are "consistent with the fourth amendment to the Constitution of the United States" and the statute, as well as statutory limitations that are directed at preventing the intentional targeting of U.S. persons or persons located within the United States. 50 U.S.C. § 1881a(b).

Under FISA, the government must notify any "aggrieved person" of its intent to "enter into evidence or otherwise use or disclose," in a proceeding against such person, "any information obtained or derived from [FISA authorized] electronic surveillance of that aggrieved person."   50 U.S.C. §1806(c).[3]   The FAA provides that "[i]nformation acquired from an

---

[3]     Section 1825(d) provides the same notice provision with respect to physical searches conducted pursuant to FISA authority.   50 U.S.C. § 1825(d).   An "aggrieved person" is defined as "a person who is the target of an electronic surveillance or any other person whose communications or activities were subject to electronic surveillance."   50 U.S.C. § 1801(k).

9

acquisition conducted under section 1881a of this title [i.e. Section 702] shall be deemed to be information acquired from an electronic surveillance pursuant to subchapter I of this chapter [i.e. Title I] for purposes of section 1806 [FISA's notice provision]. . ." 50 U.S.C. § 1881e(a).   FISA further provides that an "aggrieved person" may move to suppress evidence obtained or derived from FISA-authorized surveillance on the ground that it was "unlawfully acquired" or "the surveillance was not made in conformity with an order of authorization or approval."   50 U.S.C. §1806(e).   Any such motion must be filed in advance of the proceeding in which it will be used, "unless there was no opportunity to make such a motion or the person was not aware of the grounds of the motion."   Id.   If a suppression motion is filed, a district court "shall . . . review in camera and ex parte the application, order, and such other materials relating to the surveillance as may be necessary" if the Attorney General certifies that an adversary hearing would harm national security.   50 U.S.C. 1806(f).   If the district court determines that the surveillance was lawfully authorized and conducted, it shall deny the motion of the aggrieved person except to the extent that due process requires discovery or disclosure.   Id.

      B.     Collateral Proceedings under 28 U.S.C. § 2255

          1.     A Section 2255 Petitioner Must Show That The Discovery He Seeks Would Establish a Legal Claim That Would Entitle Him To Relief

Prisoners who collaterally attack their federal convictions under 28 U.S.C. § 2255 are "not entitled to discovery as a matter of ordinary course."   Bracy v. Gramley, 520 U.S. 899, 904 (1997).   Instead, under Rule 6(a) of the Rules Governing Section 2255 Proceedings, a district judge may authorize a party to conduct discovery only for "good cause."   The Supreme Court has interpreted that term to mean "specific allegations before the court [that] show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."   Id. at 908-09 (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)).

10

Moreover, as courts of appeals have repeatedly recognized, Rule 6(a) neither "authorize[s] fishing expeditions" nor allows discovery on the basis of "conclusory allegations," but instead requires specific allegations that, if developed, would entitle the petitioner to relief on a specific legal claim.  Harris v. Johnson, 81 F.3d 535, 540 (5th Cir.1996); see also Hubanks v. Frank, 392 F.3d 926, 933-34 (7th Cir. 2004) (good cause for discovery "cannot exist where the facts alleged do not provide a basis for relief"); Stanford v. Parker, 266 F.3d 442, 460 (6th Cir. 2001) (no error in denial of "a fishing expedition masquerading as discovery" motion); Hill v. Johnson, 210 F.3d 481, 487-88 (5th Cir. 2000) (petitioner must establish "a prima facie [case] for relief" supported by allegations that must be "specific, as opposed to merely speculative or conclusory, to justify discovery"); Murphy v. Johnson, 205 F.3d 809, 814 (5th Cir. 2000) (discovery on Brady claim properly denied where petitioner made only conclusory or speculative allegations, as opposed to a prima facie showing that undisclosed exculpatory information existed or that it was material to the outcome of the case); Clark v. Johnson, 202 F.3d 760, 767 (5th Cir. 2000) (motion for discovery to investigate "hidden" facts underlying claim for relief was "tantamount to a request for an impermissible fishing expedition"); Rich v. Calderon, 187 F.3d 1064, 1067-68 (9th Cir. 1999) (denying discovery where petitioner failed to identify specific claims that might entitle him to relief, because discovery under Rule 6 "was never meant to be a fishing expedition for habeas petitioners to 'explore their case in search of its existence'"); Deputy v. Taylor, 19 F.3d 1485, 1492-93 (3rd Cir.1994).   Thus, to establish good cause for discovery, a petitioner must "identify the essential elements of [his] substantive claim" and make a specific and concrete prima facie showing that, if discovery were allowed, he could satisfy each element of his claim for relief and defeat any procedural bars that would prevent the court from reaching the merits of his claim. Newton v. Kemna, 354 F.3d 776, 783-84 (8th Cir. 2004) (internal quotation marks and citation

omitted); see also Beatty v. Greiner, 50 Fed. Appx. 494 (2d Cir. 2002) (affirming denial of

discovery where relief would have been procedurally barred by failure to satisfy exhaustion

requirement); United States v. Wilson, 901 F.2d 378 (4th Cir. 1990) (affirming district court's

denial of discovery in Brady-claim § 2255 proceeding because requests were broad and unspecific

and, if granted, would add little or nothing to the proceeding).

2.      Effect of Guilty Plea

As a general matter, a guilty plea extinguishes a defendant's claims relating to the

deprivation of rights prior to the entry of the plea.   Tollett v. Henderson, 411 U.S. 258, 267

(1973); United States v. Gregg, 463 F.3d 160, 164 (2d Cir. 2006).   In sum, "a counseled plea of

guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite

validly removes the issue of factual guilt from the case. . . .   A guilty plea, therefore, simply

renders irrelevant those constitutional violations not logically inconsistent with the valid

establishment of factual guilt and which do not stand in the way of conviction if factual guilt is

validly established."   Lugo v. Artus, No. 05 Civ. 1998 (SAS), 2008 WL 312298, at *3 (S.D.N.Y.

Jan. 31, 2008).   Thus, a Section 2255 petitioner who has pled guilty to criminal charges "is not

entitled to the vacating of his conviction on the basis of claimed antecedent constitutional

infirmities . . . even assuming there is some factual basis for these allegations."   Amparo v.

Henderson, No. 86 Civ. 4310, 1989 WL 126831, at *1–*2 (E.D.N.Y. Oct. 18, 1989).   In addition,

the Supreme Court has held that a defendant is not entitled to disclosure of all information in the

possession of the government prior to the entry of a plea.   United States v. Ruiz, 536 U.S. 622,

630 (2002) (noting that "the Constitution . . . does not require complete knowledge of the relevant

circumstances").   Collateral relief can be available in extraordinary circumstances where the

government has made misrepresentations or failed to disclose material exculpatory evidence prior

to a plea.   See, e.g., Ferrara v. United States, 384 F. Supp. 2d 384, 389-90 (D. Mass. 2005).

Similarly, a defendant may be entitled to withdraw his guilty plea where the government has

engaged in misconduct.   United States v. Fisher, 711 F.3d 460, 465-66 (4th Cir. 2013).

       Here, as discussed further below, Hasbajrami has <u>not</u> moved to vacate his guilty

plea, but rather made a broad and speculative discovery demand relating to the legal authorities

and facts underlying the investigation of his criminal conduct.

     C.     <u>Discovery Standards</u>

       In the course of a criminal case, the government is obligated to produce information

pursuant to four basic categories of discovery: (1) the materials described in Rule 16 of the Federal

Rules of Criminal Procedure; (2) prior statements of a witness, pursuant to 18 U.S.C. § 3500; (3)

impeachment material pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972), in cases which

proceed to trial; and (4) exculpatory evidence as defined by <u>Brady v. Maryland</u>, 373 U.S. 83

(1963), and its progeny.   In order to obtain discovery based on a claim of prosecutorial

misconduct, a defendant must present a threshold showing of some evidence that the alleged

prosecutorial misconduct occurred, to rebut the presumption that prosecutors have acted in good

faith.   <u>See, e.g.</u>, <u>United States v. Armstrong</u>, 517 U.S. 456, 464, 468-69 (1996) (holding that,

because "courts presume that [prosecutors] have properly discharged their official duties,"

defendants seeking discovery in support of a selective prosecution claim must make a "threshold

showing"); <u>see also</u> <u>United States v. Arenas-Ortiz</u>, 339 F.3d 1066, 1069 (9th Cir. 2003) (describing

<u>Armstrong</u> standard as "rigorous").

       In addition where, as here, discovery demands implicate classified materials

relating to FISA and Section 702 materials, there are specific statutory conditions that directly

govern production of those materials, the unauthorized disclosure of which could cause grave

harm to national security.   <u>See</u> 50 U.S.C. §§ 1806(f) and 1881e(a).   The Court can only order

disclosure of any portion of the Section 702 materials submitted for <u>in camera</u>, <u>ex parte</u> review if

13

the Court has first concluded that it is unable to make an accurate determination of the legality of

the collection by reviewing the government's submissions (and any supplemental materials that

the Court may request).   Id.   If the Court is able to accurately determine the legality of the

collection based on its in camera, ex parte review of the materials the government submits, then the

FISA statute prohibits disclosure of any of those materials to the defense, unless otherwise

required by due process.   See, e.g., United States v. El-Mezain, 664 F.3d 467, 566 (5th Cir. 2011);

United States v. Duggan, 743 F.2d 59, 78 (2d Cir. 1984).

## ARGUMENT

I.   HASBAJRAMI HAS NO RIGHT TO DISCOVERY ON COLLATERAL ATTACK

Hasbajrami's criminal case is closed.   He does, however, have a pending motion

under Section 2255, and the government has not objected to him amending that pending petition to

address the Supplemental Notification.   Prisoners such as Hasbajrami who collaterally attack

their federal convictions under 28 U.S.C. § 2255, however, are "not entitled to discovery as a

matter of ordinary course."   Bracy, 520 U.S. at 904.   For the reasons set forth below, he is

precluded from obtaining the discovery he seeks in this civil Section 2255 proceeding.[4]

Hasbajrami's motion seeks broad discovery over a wide range of issues, including

internal government deliberations regarding the provision of the original FISA notice and the

Supplemental Notification, and the legality of the Title VII collection from which certain of the

evidence the government intended to use at trial was derived.   Hasbajrami ignores, however, the

applicable standard for obtaining discovery in the context of a collateral proceeding under 28

U.S.C. § 2255.   Under that standard, a petitioner may only obtain discovery if he sets forth

---

[4]   Indeed, even if he were successful in vacating his guilty plea and reopening his case, he would not be entitled to the discovery he seeks.

specific factual allegations that, if fully developed through discovery, would support a particular

legal claim that would entitle him to relief in the collateral proceeding.

As discussed in greater detail below, Hasbajrami's motion does not satisfy that

standard.   He has not yet raised any substantive claim related to the Section 702 collection.

Although he contends that discovery is warranted to support various constitutional and statutory

challenges to the legality of the Section 702 collection that he may raise in a future amendment to

his Section 2255 motion, Hasbajrami is foreclosed in this collateral proceeding from bringing any

of the claims he identifies other than a challenge to the voluntariness of the plea.   And, as

explained below, none of the discovery Hasbajrami seeks is relevant to that claim.

A.   Hasbajrami has not raised a substantive claim.

The primary habeas claim pending before this Court is Hasbajrami's challenge to

the constitutionality of 18 U.S.C. § 2339A, an issue unrelated to the nature and legality of the

collection of the evidence that would have been used to prove his guilt of that crime in the criminal

case.   Although the motion for discovery is premised on the proposition that Hasbajrami might

decide to seek to withdraw his guilty plea, he has not made such a claim.   For this reason alone,

Hasbajrami is not entitled to any discovery.   See Puglisi v. United States, 586 F.3d 209, 213 (2d

Cir. 2009) ("There is no pre-motion discovery in a Section 2255 case").   Hasbajrami claims

entitlement to discovery in order to assess the potential merits of such a claim, but he cites no

authority in which a court has granted discovery before the moving party has actually asserted the

claim to which the discovery purportedly relates.[5]   When a defendant faces a decision whether to

plead guilty (or to challenge a plea he has already entered), he must always do so in the face of

uncertainty about whether that decision will result in a better or worse outcome than if he refused

_____

[5]   Indeed, the fact that he has not moved to withdraw his plea is a strong indication that he
has suffered no prejudice whatsoever from the timing of the Supplemental Notification.

the plea and insisted on exercising his right to challenge evidence and go to trial.   See e.g. United States v. Bradley, 400 F.3d 459, 464 (6th Cir. 2005) ("Plea bargains always entail risks for the parties - risks relating to what evidence would or would not have been admitted at trial, risks relating to how the jury would have assessed the evidence and risks relating to future developments in the law.").   If courts allow discovery so that defendants can determine whether it is to their advantage to collaterally attack a plea, that would "reduce the likelihood that prosecutors will bargain away counts (as the prosecutors did here) with the knowledge that the agreement will be immune from challenge on appeal."   Id.

      B.     <u>Hasbajrami would not be entitled to relief based on the discovery he seeks.</u>

      Here, none of the discovery Hasbajrami seeks would help establish a legal claim that would entitle him to relief in this collateral proceeding.   Hasbajrami seeks discovery to support various challenges to the lawfulness of the Section 702 collection that he purportedly intends to assert, but he is foreclosed by his guilty plea from obtaining collateral relief on those claims.   The only potential claim Hasbajrami identifies that could entitle him to relief – a challenge to the voluntariness of his plea – does not depend on the lawfulness of the Section 702 collection.   Rather, to obtain vacatur of his plea, Hasbajrami must show, inter alia, that (1) the fact that he did not receive specific notice of Section 702 collection at the time of the plea deprived him of his ability to decide voluntarily whether to plead guilty; and (2) there is a reasonable probability that, if he had received notice of Section 702 collection at the time of the plea, he would have moved to suppress, rather than plead guilty.   Neither the internal government deliberations regarding the Supplemental Notification, nor the legality and execution of the underlying collection, has any bearing on whether Hasbajrami can obtain relief on a claim that his plea was

involuntary.   For that reason, Hasbajrami cannot establish "good cause" for discovery.[6]

          1.      Hasbajrami's Guilty Plea Forecloses His Constitutional and Statutory <u>Challenges to the Legality of the Section 702 Collection</u>

      Hasbajrami suggests that he intends to challenge Section 702 collection in his case on the ground that it violated the Fourth Amendment, other constitutional provisions, and the applicable statutory requirements.   (<u>See</u>, <u>e.g.</u>, Def. Mot. at 3, 10, 30).   Those claims are foreclosed, however, by Hasbajrami's unconditional guilty plea.   As the Supreme Court has observed, a guilty plea constitutes "a break in the chain of events which has preceded it in the criminal process."   <u>Tollett</u>, 411 U.S. at 267.   Accordingly, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."   <u>Id.</u>   Rather, a defendant seeking to raise such "antecedent constitutional violations," <u>id.</u> at 266, is limited to attacks on the knowing, voluntary, and intelligent character of the guilty plea.   <u>United States v. Broce</u>, 488 U.S. 563, 569 (1989).   As the Supreme Court has explained,

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

---

     [6]   Even if, despite his guilty plea, Hasbajrami could somehow directly challenge the lawfulness of the Section 702 collection in this collateral proceeding, his claims would be foreclosed by a number of procedural bars, including the general bar on collateral review of Fourth Amendment claims, <u>see Stone v. Powell</u>, 428 U.S. 465, 494 (1976), the bar on retroactive application of new procedural rules, <u>see Teague v. Lane</u>, 489 U.S. 288, 308 (1989), and the bar on collateral relief based on non-constitutional errors, <u>see Graziano v. United States</u>, 83 F.3d 587, 589-90 (2d Cir. 1996).   Because these procedural bars would prevent the court from reaching the merits of his claims, Hasbajrami cannot establish "good cause" for discovery.   <u>See Newton</u>, 354 F.3d at 783-84.

Id.

Under these principles, Hasbajrami's guilty plea bars him from raising claims that his conviction was based on evidence obtained in violation of the Fourth Amendment or other constitutional or statutory provisions.   See Haring v. Prosise, 462 U.S. 306, 320-22 (1983) (stating that, after a defendant pleads guilty, his conviction does not rest on the evidence that he claims was improperly seized and therefore it "cannot be affected by an alleged Fourth Amendment violation"); United States v. Arango, 966 F.2d 64, 66 (2d Cir. 1992) (defendant who pled guilty waived claim that search of his van violated Fourth Amendment); United States v. Sykes, 697 F.2d 87, 89 (2d Cir. 1983) (guilty plea waived challenge to search warrant); United States v. Selby, 476 F.2d 965, 966-67 (2d Cir. 1973) (guilty plea waived appeal of motion to suppress documentary evidence); Smith v. United States, 876 F.2d 655, 657 (8th Cir. 1989) (defendant's guilty plea "waived his claims on search and seizure").   Accordingly, Hasbajrami may not bring any such claims in this collateral proceeding.   Hasbajrami may only challenge the legality of the surveillance if he obtains collateral relief on a challenge to the voluntariness of his guilty plea and, following any appeals, the criminal case is reopened and he files a motion to suppress FAA-derived evidence.   But Hasbajrami may not obtain discovery now to support a claim that he may be able to bring at some future time; rather, he is only entitled to discovery to support claims that would entitle him to relief in this collateral proceeding.   For that reason, Hasbajrami cannot establish good cause for discovery on the ground that it would be helpful in challenging the lawfulness of the Section 702 collection.

Moreover, Hasbajrami also is barred from bringing a constitutional or statutory challenge to the Section 702 collection because Hasbajrami's plea agreement expressly provided that, "The defendant agrees not to file an appeal or otherwise challenge, by petition

18

pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 15 years or below. . . .  The defendant waives any right to additional disclosure from the government in connection with the guilty plea."  (Plea Agr. ¶ 4).  Courts in the Second Circuit consistently have held such waivers to be enforceable.  See, e.g., United States v. Lee, 523 F.3d 104, 106 (2d Cir. 2008) ("As we have previously recognized, '[i]t is . . . well-settled that a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed upon guideline range is enforceable.'") (citation omitted).  Indeed, courts in the Second Circuit specifically have held enforceable waivers of the right to appeal or challenge by collateral attack in the context of post-plea claims of Fourth Amendment violations.  See, e.g., Czernicki v. United States, 270 F. Supp. 2d 391, 393 (S.D.N.Y. 2003) ("Petitioner alleges that his sentence should be vacated or modified based on alleged violations of his Fourth Amendment right to be free from unreasonable searches and seizures. . . . The petitioner's guilty plea waived his ability to raise these claims."); Rosa v. United States, 170 F. Supp. 2d 388, 409 (S.D.N.Y. 2001) (holding that terms of defendant's plea agreement precluded Fourth Amendment claim that guilty plea was based on unconstitutionally seized evidence); Tobon v. United States, 132 F. Supp. 2d 164, 168 (S.D.N.Y. 2001) ("Finally, petitioner claims that his Fourth Amendment rights were violated in that no probable cause existed . . . .  By virtue of his plea agreement, however, petitioner 'has waived all of these non-jurisdictional defenses and cannot raise them now by collateral attack.'") (citation omitted); see also Ruiz, 536 U.S. at 630 (noting that "this Court has found that the Constitution . . . does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a

19

defendant might labor").

In sum, any Fourth Amendment or other challenges to the legality of the Section 702 collection that Hasbajrami may attempt to raise are doubly waived. First, Hasbajrami's unconditional guilty plea forecloses claims asserting constitutional or statutory violations that occurred prior to the entry of the plea. Second, Hasbajrami is barred from challenging the lawfulness of the collection because he agreed in his plea agreement not to challenge his conviction on any basis other than that his sentence exceeded the 15-year statutory maximum.

2. The Discovery Hasbajrami Seeks Relating to the Supplemental Notification Does Not Implicate the Validity of his Plea

Hasbajrami's motion also seeks discovery to support a potential challenge to his plea on the ground that the government's failure to provide specific notice of intent to use Section 702-derived information at trial rendered his guilty plea involuntary. Unlike the other potential claims Hasbajrami identifies, that claim is not foreclosed by Hasbajrami's guilty plea. However, the discovery Hasbajrami now seeks would not assist him in attempting to establish that his plea was involuntary, and for that reason, his motion must fail.

The fact that Hasbajrami may not have been specifically aware of, and did not specifically waive, potential claims related to Title VII surveillance does not undermine the knowing and voluntary nature of his plea. See Broce, 488 U.S. at 573 ("Our decisions have not suggested that conscious waiver is necessary with respect to each potential defense relinquished by a plea of guilty."); Ricketts v. Adamson, 483 U.S. 1, 9-10 (1987) (explaining that the Court did "not find it significant" that a double-jeopardy claim "was not specifically waived by name in the plea agreement"); United States v. Leyland, 277 F.3d 628, 631-32 (2d Cir. 2002) (conscious relinquishment of the particular claim is not required). Rather, contrary to Hasbajrami's

20

contention, a guilty plea extinguishes constitutional defenses of which the defendant may have no knowledge.   In Broce, the Supreme Court noted that "[o]ur decisions have not suggested that conscious waiver is necessary with respect to each potential defense relinquished by a plea of guilty" because relinquishment "derives not from any inquiry into a defendant's subjective understanding of the range of potential defenses, but from the admissions necessarily made upon entry of a voluntary plea of guilty."   488 U.S. at 573-74.   The Court then held that the plea in that case had relinquished a potential defense under the Double Jeopardy Clause of which the defendant had no knowledge.   Id. at 572-74; see also Ruiz, 536 U.S. at 629-30 (observing that "the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances -- even though the defendant may not know the specific detailed consequences of invoking it.").[7]   Hasbajrami cites no cases suggesting that a guilty plea is invalid where the defendant is not informed of the specific legal authority governing surveillance whose fruits the government intended to introduce.

To be sure, in extraordinary circumstances where the defendant has been induced to

---

[7]   In addition, under analogous circumstances, the Fifth Circuit has held that the government's failure to disclose the legal process by which it obtained evidence does not constitute a discovery violation that would render a defendant's plea invalid.   See United States v. McLean, 419 Fed. Appx. 473, 474 (5th Cir. 2011) (rejecting appellant's argument that "the district court erred by not allowing him to withdraw his guilty plea based on the Government's undisclosed discovery when the discovery would have likely resulted in suppression based on the Government's improper use of an administrative summons to obtain his internet subscriber records").   In McLean, the appellant argued that, but for the nondisclosure of a summons, he would not have entered a plea.   In its unpublished decision, the Fifth Circuit held that "McLean's guilty plea precludes him from claiming that the Government's alleged failure to disclose the summons was a Brady violation, or from claiming that the use of the summons was unconstitutional.   We conclude that McLean's guilty plea was knowing and voluntary, as did the district court."   Id. (citations omitted).   Similarly, here, Hasbajrami's guilty plea precludes him from raising a Fourth Amendment challenge.

plead guilty by egregious misrepresentations or other serious misconduct, a court may find that the defendant was deprived of his ability to plead guilty voluntarily.   See Bousley v. United States, 523 U.S. 614, 619 (1998) (a plea entered by defendant with awareness of the consequences is voluntary unless it is induced by threats or misrepresentation).   To have his plea vacated, however, the defendant must show that his decision to plead guilty was induced by a misrepresentation that "strikes at the integrity of the prosecution as a whole," and he must establish a reasonable probability that, but for the misrepresentation, he would not have pleaded guilty. See Fisher, 711 F.3d at 466 (concluding on collateral review that guilty plea was rendered involuntary because police officer fabricated facts in application for a search warrant and defendant would have moved to suppress, rather than pleading guilty, had he known of the misrepresentations).[8]

   Here, Hasbajrami cannot establish that there is "reason to believe" that, if his discovery motion is granted, he would "be able to demonstrate that he is . . . entitled to relief" on this ground.   Bracy, 520 U.S. at 908-909.   First, as explained more fully below, there is no indication that the government's post-conviction filing of the Supplemental Notification reflects any bad faith or willful misconduct, much less an affirmative misrepresentation that undermines the integrity of the prosecution as a whole.   Indeed, in Mohamud, as the district court recently explained in a case where the government provided supplemental notification after the defendant was convicted at trial:

---

 [8]  Any challenge to the voluntariness of Hasbajrami's plea was forfeited and therefore subject to a cause and prejudice standard.   Bousley, 523 U.S. at 621 ("[T]he voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review.").   Even if the post-conviction Supplemental Notification satisfies the "cause" prong, Hasbajrami must still establish "actual prejudice."   In the guilty plea context, "actual prejudice" requires that he establish, at a minimum, a reasonable probability that he would not have pleaded guilty. The discovery that he seeks is not relevant to that inquiry.

> Clearly a lot of time has passed, but otherwise suppression and a new trial would put defendant in the same position he would have been in if the government notified him of the § 702 surveillance at the start of the case. Moreover, the government has apparently changed its practice in making this type of notification, so dismissal is not needed as a deterrence.
>
> In addition, once the government changed its legal opinion about when evidence could be derived under Title VII, it performed the second review of this case and provided the Supplemental Notification without prodding from the court or the defense. If the government had kept mum about the situation in this case, I would have sentenced defendant months ago. I consider this strong evidence of the lack of prosecutorial misconduct.

Mohamud, 2014 WL 2866749, at* 4; see also United States v. Gale, 314 F.3d 1, 6 (D.C. Cir. 2003) (discovery not warranted where there is "no real chance that discovery could have turned up information altering the outcome").

Moreover, the voluntariness of Hasbajrami's plea does not depend on the government's internal deliberations or on the specific details of the Section 702 collection because Hasbajrami, at the time of his plea, would have had the same (or less) information on those topics that he possesses now.   In other words, the key issues in Hasbajrami's potential voluntariness challenge -- whether the absence of Section 702 notice was so fundamental as to undermine Hasbajrami's ability to enter a valid plea and whether, had he received notice, he would have insisted on going to trial -- must be based on the information that was or should have been available to Hasbajrami at the time of the plea.   In addition, by virtue of the ex parte review provisions of the FISA statute, a pre-plea motion to suppress by Hasbajrami would similarly have been made without the benefit of the "discovery" he now seeks.   50 U.S.C. § 1806(f).

If, at the time of the plea discussion, Hasbajrami had insisted on seeking discovery related to Section 702 surveillance before pleading guilty, there would have been no plea agreement.   As the government explained to the Court prior to sentencing pursuant to Rule

11(c)(3)(A) and Section 6B1.2 of the United States Sentencing Guidelines, the government offered Hasbajrami a plea agreement that substantially reduced Hasbajrami's sentencing exposure and one of the benefits that the government received was avoiding the costs and risks of litigation related to the FISA collection (See ECF No. 39).   Accordingly, the discovery Hasbajrami now seeks has no bearing on whether he would have accepted the government's offer if Title VII notice had been provided, because he would have had to make his decision based on the same information that he possesses now.

II.    HASBAJRAMI CANNOT JUSTIFY DISCLOSURE OF THE REQUESTED
       MATERIALS ON ANY OTHER BASIS

       A.    Hasbajrami fails to establish government misconduct.

              As discussed in greater detail below, Hasbajrami argues that he is entitled to discovery regarding the circumstances surrounding the government's filing of the Supplemental Notification, alleging that it was a "deliberate violation of the notice statute" (Def.'s Mot. at 10); that it "resulted from knowing and intentional misconduct by Government actors" (id.); and that the government has engaged in a "secret policy" intended to withhold information from defense counsel nation-wide. (Id. at 18).   Hasbajrami also erroneously claims that the sequence of events surrounding the filing of the Supplemental Notice in this case and two others, United States v. Muhtorov, 12 Cr. 33 (JLK) (D. Colo.) (ECF No. 457), and United States v. Mohamud, 10 Cr. 457 (KI) (D. Or.) (ECF No. 486), demonstrates an intentional, systemic violation of the FISA notice provision by the government.   (Id. at 15-22).   It does not.

              In addition, Hasbajrami incorrectly informs the Court that the government has given Supplemental Notice of FAA-derived information in only three cases, alleging that the government conspiratorially chose three cases in different procedural postures to serve as "test cases."   (Id. at 20).   In fact, the government has publicly provided supplemental Section 702

24

notice in five cases to date.   In addition to the three cases cited by Hasbajrami, the government has provided supplemental notice in United States v. Oytun Mihalik, 11 Cr. 00833 (JLS) (C.D.C.A.) (ECF No. 145) (also a post-plea supplemental notice regarding Section 702, in the identical posture to this case, which the defendant has not challenged), and United States v. Reaz Khan, 3:12 Cr. 00659 (MO) (D. Or.) (ECF No. 59) (trial pending).

Moreover, while Hasbajrami relies on the government's notice in Mohamud, he fails to inform the Court that in that case, where the government provided supplemental notice post-trial, the district court denied a nearly identical discovery motion, seeking nearly identical materials, and advancing nearly identical arguments as those asserted here.   Mohamud, 10 Cr. 457 (KI) (D. Or.) (ECF No. 499).   Also, as noted above, on June 24, 2014, the Oregon district court issued a lengthy written opinion and order denying the defendant's motion to vacate the conviction, dismiss the indictment, suppress evidence, and grant a new trial for the government's "violation" of the pretrial notice statute.[9]   See Mohamud, 2014 WL 2866749.   In Mohamud, a jury convicted the defendant in January 2013 of attempting to use a weapon of mass destruction, in violation of 18 U.S.C. § 2332a(a)(2)(A).   The government filed a supplemental FISA notification, very similar to the one in this case, on November 19, 2013.   Of note, in denying the defendant's post trial motion to vacate his conviction, the district court found Section 702 constitutional as applied in that case.   Id.

B.   The timing of the Supplemental Notification is not indicative of bad faith.

At the outset, Hasbajrami's claim that the government engaged in deliberate misconduct to conceal the use of Title VII-derived evidence is unfounded.   The Department has

---

[9]   In that same opinion and order, the district court also denied the defendant's alternative motions for suppression of evidence and a new trial based on the government's alleged introduction at trial (and other uses) of information derived from unlawful surveillance, and the defendant's second motion for a new trial.   Mohamud, 2014 WL 2866749, at *5.

25

always understood that it is required to notify any "aggrieved person" of its intent to use or

disclose, in a proceeding against such person, any information obtained or derived from Title VII

collection, in accordance with 50 U.S.C. §§ 1806(e), 1881e(a).   The Department's determination,

however, that information obtained or derived from Title I or Title III collection may, in particular

cases, also be derived from prior Title VII collection is a relatively recent development (and one

that occurred after Hasbajrami pleaded guilty).   The timing of the Supplemental Notification was

far from ideal, but it is not indicative of bad faith.   The Supplemental Notification filed in this

case, which the government provided based on its own review, resulted from the Department's

determination and demonstrates good faith, not misconduct.

   The Department has always understood that notice pursuant to Sections 1806(c),

1825(d) and 1881e(a) must be provided when the government intends to use evidence directly

collected pursuant to Title I, III, or VII.   Such evidence would be evidence that was "obtained

from" such FISA collection.   Likewise, the Department has always recognized that notice

pursuant to those provisions must be provided when the government intends to use evidence

obtained through ordinary criminal process (such as a Rule 41 search warrant) that was itself based

directly on information obtained pursuant to Title I, III, or VII.   Such evidence clearly would be

evidence that was "derived from" such FISA collection.

   Until last year, however, the Department had not considered the particular question

of whether and under what circumstances information obtained through electronic surveillance

under Title I or physical search under Title III could also be considered to be derived from prior

collection under Title VII.   After conducting a review of the issue, the Department determined

that information obtained or derived from Title I or Title III FISA collection may, in particular

cases, also be derived from prior Title VII collection, such that notice concerning both Title I/III

and Title VII collections should be given in appropriate cases with respect to the same information.[10]

In the matter at hand, in September 2011, at the time the original FISA notice was filed in this case, the government was aware of the fact that some of the evidence to be used had been obtained or derived from Title I and Title III FISA collection.   Indeed, prior to Hasbajrami's plea, the government produced in discovery the evidence on which it intended to rely, including declassified email communications, some of which evidence and information had been obtained pursuant to FISA.   The government did not determine, prior to the plea or sentencing in this case, whether that same evidence also was "derived," as a matter of law, from prior FISA collection pursuant to Title VII.   Based on the Department's recent determination, which occurred long after Hasbajrami pleaded guilty and was sentenced, the government reviewed the evidence that it had produced in discovery and would have offered against Hasbajrami at trial had he not pleaded guilty, and determined that some of the evidence obtained and derived from Title I and Title III collection was also derived from Section 702 collection as a matter of law.   As a result, the government provided the Supplemental Notification, in an abundance of caution, to inform Hasbajrami and the Court that the government had intended to offer into evidence or otherwise use Section 702-derived information to prove the defendant's guilt had the case proceeded to trial.

In this case, the government acted in accordance with the Department's then-current standard practice and under a good faith understanding that the initial notice of the use of Title I and Title III FISA evidence fully satisfied the government's notice obligations.

---

[10]   The Department has concluded that in determining whether information is "obtained or derived from" FISA-authorized surveillance, the appropriate standards and analyses are similar to those appropriate in the context of surveillance conducted pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2522.

Hasbajrami's claims that the Department's statements to the U.S. Supreme Court in <u>Clapper v.</u> <u>Amnesty Int'l USA</u>, 133 S. Ct. 1138 (2013) were inconsistent with existing Department policy and that those statements led to a revelation that government actors had previously made a "conscious decision to conceal" collection of FAA derived evidence on which it intended to rely are baseless. (Def.'s Mot. at 15).

In <u>Clapper</u>, attorneys and media organizations brought a civil action seeking a declaration that Section 702 of the FAA was unconstitutional, claiming that they were forced to incur expenses to avoid electronic surveillance because they had communicated with foreign individuals whom they believed were likely monitored under Section 702.   The Supreme Court held that the plaintiffs lacked standing and declined to opine on the constitutionality of Section 702.   The Department informed the U.S. Supreme Court in that case, that "[i]f the government intends to use or disclose any information obtained or derived from its acquisition of a person's communications under [Title VII] in judicial or administrative proceedings against that person, it must provide advance notice of its intent to the tribunal and the person, whether or not the person was targeted for surveillance under [Title VII]."   (U.S. Gov't Br. at 8.)   This is an accurate statement of both the law and the government's previous and current understanding that FISA imposes an obligation on the government to provide notice of its intent to use or disclose information that was derived from Title VII collection as well as information that was obtained from Title VII collection.   The issue before the court in <u>Clapper</u> did not involve the precise circumstances in which information is properly considered to be derived from Title VII collection, and thus Hasbajrami's reliance on that case is misplaced.

Hasbajrami's allegation that the government deliberately violated FISA's notice requirement (Def.'s Mot. at 15) amounts to an allegation of prosecutorial misconduct.   In order to

28

obtain discovery based on a claim of prosecutorial misconduct, a defendant must present a threshold showing of some evidence that the alleged prosecutorial misconduct occurred to rebut the required presumption that prosecutors have acted in good faith.   See, e.g., Armstrong, 517 U.S. at 464, 469 (holding that, because "courts presume that [prosecutors] have properly discharged their official duties," defendants seeking discovery in support of a selective prosecution claim must make a "threshold showing"); United States v. Arenas-Ortiz, 339 F.3d 1066, 1069 (9th Cir. 2003) (describing Armstrong standard as "rigorous").   Hasbajrami has not made such a showing in this case.   Although the government does not dispute that the notice was untimely, Hasbajrami has not otherwise produced evidence to overcome the presumption that the government in this case acted in good faith.

        While the government understands that it is solely responsible for the untimeliness of the notice in this case, the post-plea filing of the Supplemental Notification does not reflect any bad faith or willful misconduct, and it does not call into question the defendant's factual guilt. Rather, it is the result of a careful review of the range of circumstances in which information obtained or derived from Title I or Title III collection should also be considered as a matter of law to be derived from prior Title VII collection, such that the government should give notice of both Title I/III and Title VII surveillance in those cases.   This type of internal review and implementation of remedial measures is not indicative of misconduct.   See Mohamud, 2014 WL 2866749, at *4 (noting the Department's recent determination and finding "strong evidence of the lack of prosecutorial misconduct" under the circumstances).

    A.    Late notice does not constitute a Brady violation.

        Hasbajrami raises the specter of a Brady violation based on the timing of the Supplemental Notification.   (See, e.g., Def. Mot. at 24 (stating that, "In the context of a guilty

plea, undisclosed exculpatory information is material when 'there is a reasonable probability that but for the failure to produce such information the defendant would not have entered the plea but instead would have insisted on going to trial") (citing Tate v. Wood, 963 F.2d 20, 24 (2d Cir. 1992)).   The district court in Mohamud rejected a similar claim and the government urges this Court to do so as well.   Mohamud, 2014 WL 2866749, at *6.   As Hasbajrami correctly recognizes, "Brady requires that the government disclose material evidence favorable to a criminal defendant."   United States v. Mahaffy, 693 F.3d 113, 127 (2d Cir. 2012).   Yet, Hasbajrami points to no case, and the government is not aware of any, in which the late notice of the legal authority underlying the collection of evidence constituted a Brady violation – particularly where, as here, that legal authority has expressly been held to be lawful under similar circumstances.   See Mohamud, 2014 WL 2866749, at *27 ("Based on the statutory protections, I conclude the government's compelling interest in protecting national security outweighs the intrusion of § 702 surveillance on an individual's privacy.   Accordingly, § 702, as applied to defendant, is reasonable under the Fourth Amendment."); see also In re Directives Pursuant to Section 105B of the Foreign Intelligence Surveillance Act, 551 F.3d 1004 (FISC Ct. Rev. 2008) (upholding the constitutionality of the Protect America Act, which was the predecessor to the FAA and granted a broader authority under which the DNI and Attorney General could jointly authorize the acquisition of foreign intelligence information concerning persons reasonably believed to be located outside the United States).

As the Supreme Court has explained, "There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."   Strickler v. Greene, 527 U.S. 263, 281-82

30

(1999).   Here, (1) there is no "evidence" at issue, only late notice of a legal authority underlying certain collection; (2) the information at issue is not material to guilt; and (3) the fact that Hasbajrami has not moved to vacate his guilty plea based on the disclosure of the Supplemental Notification creates a strong inference that he has not suffered any prejudice as a result of the government's delay.   As the district court correctly observed in Mohamud, "[a]lthough defendant vehemently disagrees, the fundamental problem with defendant's argument is that there is no new evidence.   A surveillance is not evidence—it produces evidence." Mohamud, 2014 WL 2866749, at *6.

III.   THE MATERIALS HASBAJRAMI SEEKS ARE PROTECTED BY THE ATTORNEY CLIENT AND DELIBERATIVE PROCESS PRIVILEGES

Most, if not all, of the government records Hasbajrami seeks regarding the government's internal deliberations relating to the provision of the Supplemental Notification would be protected from disclosure by attorney work product and deliberative process privileges. See United States v. Ghailani, 751 F. Supp. 2d 498, 501-02 & n.16 (S.D.N.Y. 2010); United States v. Fernandez, 231 F.3d 1240, 1246 (9th Cir. 2000) (holding that death penalty evaluation form and prosecution memorandum were protected by the deliberative process and work product privileges).   Although a defendant alleging government misconduct can overcome the deliberative process privilege based on a sufficient showing of necessity, see In re Sealed Case, 121 F.3d 729, 737-38 (D.C. Cir. 1997), Hasbajrami can make no such showing here in the absence of an indication of willful misconduct, prejudice, or relevance of the material to the merits of Hasbajrami's current petition.   Similarly, while Hasbajrami correctly points out that these privileges would not prevent disclosure to a criminal defendant of otherwise discoverable evidence material to his defense (Def.'s Mot. at 27), Hasbajrami cannot show that the internal government deliberative records he seeks, which have nothing to do with whether he committed

31

the offense for which he pleaded guilty, are material in the relevant sense.[11]   As one district court

in this Circuit has observed, "the fact that the color of the traffic light would be relevant [in a motor

vehicle incident] would not justify disclosure of what a motorist told his or her lawyer on that

subject.   So too here.   The fact that the reasons for delay in this case are pertinent does not justify

disclosure of privileged communications arguably pertinent to that subject because there has been

no reliance by the government on those communications."   Ghailani, 751 F. Supp. 2d at 502.

Hasbajrami's reliance on United States v. Reynolds, 345 U.S. 1, 12 (1953), for the

proposition that the government cannot invoke governmental privileges to "deprive the accused of

anything which might be material to his defense" is also misplaced.   Here, the government

complied with all of its Brady obligations before Hasbajrami entered his plea.   Indeed, as noted

above, the government disclosed classified information to cleared defense counsel prior to the plea

in the context of negotiating a fair resolution.   (See ECF No. 28).   The government's internal

discussions surrounding the provision of the Supplemental Notification are not material to his

instant petition or to his defense had he gone to trial because the Supplemental Notification has

placed Hasbajrami in the same posture as he would have been in before entering his plea.

Hasbajrami has made no cognizable claim as to why he should receive internal documents to

which he would not have been entitled prior to the entry of his plea, or had he proceeded to trial.

As discussed above, the Supplemental Notification does not amount to new evidence.   It was a

---

[11]   Hasbajrami's argument that discovery of internal deliberative documents is not
protected by privilege because, according to media reports "several Obama administration
officials familiar with the deliberations have already made selective disclosures to the press on the
subject," is similarly meritless.   (Def.'s Mot. at 27.)   Aside from the question of whether
unsourced media reports amount to a privilege waiver by the Department, such records are
irrelevant to the only proper questions before this Court in Hasbajrami's current Section 2255
petition or any future petition relating to his guilty plea.   Nor would discovery of internal
deliberative documents regarding the provision of notice be appropriate even if the Court
eventually set aside Hasbajrami's plea, undertook motion practice and ultimately ruled against the
government on the merits of a suppression motion.

notice that some of the evidence that the government intended to use against Hasbajrami had itself been derived from an additional, lawful surveillance authority, as set forth in Section 702.

Indeed, had Hasbajrami moved to suppress the evidence obtained from FISA-authorized collection based on the original notice in this case, the FISA applications, orders and related materials under which the evidence was obtained or derived would have been presented to the Court in camera and ex parte, as is appropriate under Section 1806(f). Tellingly, early in Hasbajrami's seventy-four page motion is the concession that Hasbajrami is unsure as to whether he even now wishes to seek to vacate his conviction and sentence based on the Supplemental Notification. (Def. Mot. at 5). Hasbajrami is unsure because he understands that he derived a substantial, and not inequitable, benefit from the plea. His motion is, at best, a fishing expedition that casts a wide net, hoping to find something that may support his vague allegation of misconduct and impropriety in the government's national security surveillance programs sufficient to vacate his indictment outright. Hasbajrami should not be permitted to have his cake and eat it too. In his plea agreement Hasbajrami agreed to forgo precisely such an attack.

IV. THERE IS NO BASIS TO ORDER DISCOVERY OF CLASSIFIED MATERIALS RELATING TO THE AUTHORIZATION OR EXECUTION OF SECTION 702 COLLECTION BECAUSE THE LAWFULNESS OF THE COLLECTION IS NOT BEFORE THE COURT

Hasbajrami argues that the Court should grant discovery of the classified materials related to the authorization of the Section 702 collection itself (including the targeting, scope, manner, and authorizations related to the collection), claiming that "there is no question that the defense will challenge the constitutionality of the FAA as part of the substantive motions following completion of discovery." (Def.'s Mot. at 30-36). However, Hasbajrami's putative future challenge to the constitutionality of Section 702 collection provides no basis for discovery of the requested materials and he advances no meaningful argument supporting why he would

33

require, or be lawfully entitled to such materials to make such a claim.   Discovery of FISA-related materials, including that of information regarding any acquisition of foreign intelligence information conducted pursuant to Section 702 of Title VII, is expressly proscribed by the procedures outlined in 50 U.S.C. § 1806(f).[12]

Section 1806(f) requires district courts to conduct an in camera and ex parte review of any materials related to Section 702 collection upon the Attorney General's filing of a declaration stating that disclosure of such materials or an adversary hearing would harm the national security of the United States.   50 U.S.C. §§ 1806(f) and 1881e(a).   In turn, a court can only order disclosure of any portion of the Section 702 materials submitted for in camera, ex parte review if the court has first concluded that it is unable to make an accurate determination of the legality of the collection by reviewing the government's submissions (and any supplemental materials that the court may request).   Id.   If the court is able to accurately determine the legality of the collection based on its in camera, ex parte review of the materials the government submits, then the FISA statute prohibits disclosure of any of those materials to the defense, unless otherwise required by due process.   See, e.g., El-Mezain, 664 F.3d at 566; Duggan, 743 F.2d at 78.

Thus, the FISA statute mandates that a district court can order discovery of Section 702-related materials only where the lawfulness of the surveillance itself is at issue, and only where, following its in camera and ex parte review, the court concludes that disclosure to the defense is necessary for it to make an accurate determination of such lawfulness.   In the matter at hand, Hasbajrami has not challenged, and cannot challenge, the lawfulness of the Section 702 collection to which he was aggrieved because his plea extinguished that right and such a claim is

---

[12]   50 U.S.C. § 1881e(a) provides that "information acquired from an acquisition collected under [Section 702] shall be deemed to be information acquired from an electronic surveillance pursuant to [title I]" for purposes of a discovery motion.

not cognizable in a Section 2255 proceeding.   Thus, the lawfulness of the collection is not presently before the Court and discovery is unwarranted.

As noted at the outset, Hasbajrami may properly bring a motion for Section 702-related discovery only if his plea is set aside and he proceeds to motion practice and trial. Title 50 U.S.C. § 1806(e) allows a defendant to move to suppress any evidence obtained or derived from collection as to which he is an aggrieved person that will be used against him in a proceeding in the case.   This remedy—setting aside the plea and allowing Hasbajrami to file a pre-trial suppression motion—would put Hasbajrami in the same position as if he had received the Supplemental Notification before entering his plea.[13]

Here, Hasbajrami does "not dispute that FISA provides for in camera, ex parte consideration of materials relevant to these motions if certain national security considerations exist" (Def.'s Mot. at 6), but he incorrectly concludes that he can circumvent the FISA discovery process and that this Court can produce FISA-related materials to him now.   In support of this contention, Hasbajrami does not cite a single FISA-related district court opinion.

Instead, Hasbajrami improperly relies on language from courts that did not order discovery pursuant to the statutory scheme outlined in FISA, but rather discussed discovery of classified materials under the Classified Information Procedures Act, 18 U.S.C. App. 3 ("CIPA").

---

[13]   Because a remedy exists that would fulfil the purpose of FISA's notice provisions, i.e. to enable defendants to move to suppress, the disclosure that Hasbajrami seeks cannot be necessary to "formulate a remedy" for the provision of late Section 702 notice in this case. (Def.'s Mot. at 23.) There is no need for any additional remedies to deter future government misconduct either. (Id. at 28.)   As explained above, there has been no intentional misconduct in this case. And, in any event, the potential for vacatur of guilty pleas and suppression of evidence provides sufficient deterrence of any potential government misconduct.   See Davis v. United States, 131 S. Ct. 2419, 2429 (2011) (noting that exclusion of illegally obtained evidence is a "harsh sanction"); United States v. Nicholson, 721 F.3d 1236, 1256 (10th Cir. 2013) ("[E]xclusion is an especially potent remedy" in deterring official misconduct, but "not one individuals may insist on as a matter of personal constitutional right.") (internal quotation marks and citation omitted).

Although CIPA does govern the use and disclosure in criminal cases of classified information generally, it does not trump or replace the statutory scheme set forth in FISA specified for discovery of materials relating to the authorities set forth in Titles I, III and VII.   Thus, Hasbajrami's reliance on United States v. Pappas, 94 F.3d 795, 799-801 (2d Cir 1996) and United States v. Abu Jihaad, 630 F.3d 102, 140 (2d Cir. 2010), is misplaced.   CIPA does not apply here -- a civil Section 2255 proceeding involving a motion for discovery of FISA and FAA-related materials.   Indeed, in Abu Jihaad, the Second Circuit held that FISA was constitutional as applied and on its face, and that the district court had properly denied the defendant disclosure of FISA related materials and a preliminary hearing to challenge the admissibility of FISA-obtained communications.   Id. at 117-130.   In addition, in a separate part of the opinion, the circuit court upheld the district court's protective orders issued pursuant to Section 4 of CIPA and the district court's ex parte review of the government's motions for CIPA protective orders.   Id. at 139-43.

V.      DEFENSE COUNSEL'S SECURITY CLEARANCES ARE NOT A DETERMINATIVE OR LAWFUL BASIS UPON WHICH TO PROVIDE THE REQUESTED DISCOVERY

In addition to conflating CIPA and FISA, Hasbajrami mistakenly asserts that the Court can order the requested discovery because defense counsel possesses the "requisite security clearances."   (Def.'s Mot. at 7).   This argument is unavailing in both the FISA and CIPA contexts.   It is black letter law that the mere possession of a security clearance does not entitle counsel access to classified information.   Counsel must also have a "need to know."   See Executive Order 13526 §§ 4.1(a) and 6.1 (dd) (requiring that a "need-to-know" determination be made prior to the disclosure of classified information to anyone, including those who possess a security clearance); United States v. Daoud, 755 F.3d 479, 484 (7th Cir. 2014) (finding that district court erred in opining that "any concerns about disclosure [of FISA-related information] were dissolved by the defense counsel's security clearances[,]" and noting that it is "a mistake to think

that simple possession of a security clearance automatically entitles its possessor . . . access to classified information that he is cleared to see."); El-Mezain, 664 F.3d at 568 ("We are unpersuaded by the defendants' argument that the Government's interest [in protecting classified information from disclosure to defense counsel] is diminished because defense counsel possess security clearance to review classified material."); United States v. Amawi, 2009 WL 961143 (N.D. Ohio, Apr. 7, 2009) (cleared counsel denied access to CIPA classified information because they had no need to know); United States v. Abu-Jihaad, 2007 WL 2972623, at *2 (D. Conn. Oct. 11, 2007) (citing United States v. Yousef, 327 F.3d 56, 168 (2d Cir. 2003)); United States v. Libby, 429 F. Supp. 2d 18, 24 n.8 (D.D.C. 2006) (security clearance alone does not justify disclosure because access to classified information is justified only upon a showing that there is a "need-to-know"); accord United States v. Bin Laden, 126 F. Supp. 2d 264, 287 n.27 (S.D.N.Y. 2000); see generally United States v. Ott 827 F.2d 473, 476-77 (9th Cir. 1987) ("Congress has a legitimate interest in authorizing the Attorney General to invoke procedures designed to ensure that sensitive security information is not unnecessarily disseminated to anyone not involved in the surveillance operation in question, whether or not she happens for unrelated reasons to enjoy a security clearance").   Here, Hasbajrami's discovery motion is not properly before the Court for all of the reasons discussed herein, and, even if it were, defense counsel has no "need to know" under the circumstances and pursuant to Section 1806(f).   Respectfully, the matter before the Court is not as "complex" as Hasbajrami asserts (see Def. Mot. at 5).   The main issue is simply this: did the government's failure to notify Hasbajrami of the legal authority underlying the FISA collection before he pleaded guilty render his guilty plea "unknowing" in such a way that undermines the integrity of the prosecution?   If so, he should move to vacate his plea and, if successful, proceed to trial.   If not, he should enjoy the benefits of his plea bargain, namely a shorter sentence than he

37

would have received absent the statutory cap that resulted from the plea agreement.   In neither instance, however, is defense counsel entitled to sweeping discovery into the inner workings of the government's national security apparatus.

## VI.   HASBAJRAMI'S SWEEPING ALLEGATIONS RELATING TO GOVERNMENT SURVEILLANCE PROGRAMS ARE NOT GROUNDED IN THE RECORD

Finally, Hasbajrami's vague and sweeping attacks on the secrecy of the government's counter-terrorism efforts are unfounded, speculative and ignore the reality that the government has been able to disrupt and apprehend terrorists, such as Hasbajrami, precisely because its methods are so closely guarded.   To the extent that he seeks discovery of the use of other surveillance activities that he speculates may have been used in his case, that request should be denied.   None of the other legal authorities or investigative activities raised in his motion is relevant to this case.   There is no new evidence in this case, and the Supplemental Notification did not signal otherwise.   Moreover, the Supplemental Notification has nothing to do with the "seizure and accessing of internet and telephone metadata" (Def.'s Mot. at 36) or any undisclosed "secret surveillance programs" (Def.'s Mot. at 40).   The law does not permit discovery based on defense speculation.

38

<u>CONCLUSION</u>

For the reasons set forth above, Hasbajrami's motion to compel discovery should be denied in its entirety.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:   _____/s/_____
Seth D. DuCharme
Assistant United States Attorney
(718) 254-6021

JOHN P. CARLIN
Assistant Attorney General
for National Security

Alexis Collins
Trial Attorney
Counterterrorism Section
U.S. Department of Justice

cc:   Steve Zissou, Esq.
      Michael Bachrach, Esq.