UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
UNITED STATES OF AMERICA,

        - against -                11 Cr. 623 (JG)

AGRON HASBAJRAMI,

                Defendant.
-------------------------------------------------X
-------------------------------------------------X
AGRON HASBAJRAMI,

                Petitioner,

        - against -                13 Cv. 6852 (JG)

UNITED STATES OF AMERICA,

                Respondent.
-------------------------------------------------X

**REPLY-MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT/PETITIONER AGRON HASBAJRAMI'S
MOTION FOR DISCOVERY**

STEVE ZISSOU, ESQ.           MICHAEL K. BACHRACH, ESQ.
42-40 Bell Blvd., Suite 302     276 Fifth Avenue, Suite 501
Bayside, New York 11361      New York, New York 10001
(718) 279-4500              (212) 929-0592

*Attorneys for Defendant/Petitioner Agron Hasbajrami*

## Table of Contents

Table of Authorities ................................................................................. ii

Preliminary Statement ............................................................................... 1

Argument ..................................................................................................... 2

     DISCOVERY SHOULD BE ORDERED SO DEFENSE COUNSEL MAY EFFECTIVELY ADVISE DEFENDANT/PETITIONER AGRON HASBAJRAMI WHETHER EVIDENCE EXISTS TO WARRANT RELIEF UNDER FED.R.CRIM.P. 33 OR 28 U.S.C. § 2255 ..................................................................................... 2

    I.     The Parties Agreed to Litigate Discovery *Prior to* Requiring Hasbajrami to move to vacate his guilty plea ....................................... 2

    II.    The Government's claim that it had not considered the possibility that FISA evidence could be derived from FAA surveillance until after Hasbajrami filed his 2255 motion on December 4, 2013, is not credible ......................................................... 8

    III.   The Government is incorrect to conclude that Hasbajrami's challenge to the voluntariness of his guilty plea will not turn on the lawfulness of Title VII surveillance (i.e., FAA surveillance) ....... 13

    IV.   The ability to refrain from providing FAA notice was not a benefit agreed to as part of plea negotiations in this case ................... 18

    V.    The Government should be required to comply with Hasbajrami's discovery demands by providing a privilege log in relation to any discovery to which it could advance a privilege and by disclosing all information to which no privilege exists ................................................................................... 19

    VI.   The Government's claim that there is no new evidence in this case is both misleading and misplaced ................................................. 25

Conclusion ................................................................................................. 27

i

## Table of Authorities

CASES

Bousley v. United States,
523 U.S. 614 (1998).....................................................................................16

Brady v. Maryland,
373 U.S. 83 (1963)..........................................................................6, 20, 22, 23

Clapper v. Amnesty International USA, et al.,
133 S.Ct. 1138 (2013)....................................................................................11

Strickler v. Green,
527 U.S. 263 (1999)........................................................................................26

United States v. Megahey,
553 F.Supp. 1180 (EDNY 1982) .....................................................................9

United States v. Belfield,
692 F.2d 141 (D.C. Cir. 1982).........................................................................9

United States v. Ghailani,
751 F.Supp.2d 498 (SDNY 2010) ............................................................24, 25

United States v. Khan,
Docket No. 11 Cr. 20331 (S.D. Fla. Dec. 14, 2011) .....................................11

United States v. Mahaffy,
693 F.3d 113 (2d Cir. 2012) ...........................................................................26

Youngblood v. West Virginia,
547 U.S. 867 (2006)........................................................................................26

STATUTES AND OTHER AUTHORITIES

8 U.S.C. § 1101.................................................................................................15

28 U.S.C. § 2255................................................................................. *passim*

50 U.S.C. § 1801................................................................................15

50 U.S.C. § 1806.......................................................2, 7, 10, 17, 18

50 U.S.C. § 1881a .......................................................2, 7, 17. 20

50 U.S.C. § 1881e.................................................................2, 7

Fed.R.Crim.P. 16 ......................................................................18

Fed.R.Crim.P. 33 ................................................................. *passim*

Foreign Intelligence Surveillance Act of 1978 ("FISA"),
as amended, 50 U.S.C. §§ 1801-1812, 1821-1829 ................................ *passim*

FISA Amendments Act ("FAA"),
as amended, 50 U.S.C. § 1881a ........................................... *passim*

Charles Savage, *Door May Open for Challenge to Secret Wiretaps*,
NY Times, October 16, 2013............................................10, 11, 12

Robert Barnes & Ellen Nakashima, *U.S. Tells Terror Suspect It Will
Use Surveillance Evidence*,
Wash. Post, October 25, 2013 .....................................................12

## **Preliminary Statement**

Defendant/Petitioner Agron Hasbajrami, by and through counsel, submits the instant Reply Memorandum of Law in Further Support of his Motion for Discovery.

From the outset we note that the Government's Response Brief is troubling in a number of respects.  It mischaracterizes the evidence known to the defense at the time of his guilty plea, fails to acknowledge its own prior agreements with counsel, blatantly misinterprets its obligations under <u>Brady</u> and the FAA (not just its present obligations, but rather its obligation at the time of and prior to Hasbajrami's plea hearing), and completely ignores the specific discovery demands requested in Hasbajrami's motions responding instead – and entirely – to the general background discussion rather than the specific requests.  Since it would take a Herculean feat to address each and every misstatement made in the Government's brief, the instant reply brief will focus on only those misrepresentations and misstatements that appear to need the most immediate correction.

<u>**Argument**</u>

**DISCOVERY SHOULD BE ORDERED SO DEFENSE COUNSEL MAY EFFECTIVELY ADVISE DEFENDANT/PETITIONER AGRON HASBAJRAMI WHETHER EVIDENCE EXISTS TO WARRANT <u>RELIEF UNDER FED.R.CRIM.P. 33 OR 28 U.S.C. § 2255</u>**

**I.     The Parties Agreed to Litigate Discovery *Prior to* Requiring Hasbajrami <u>to move to vacate his guilty plea.</u>**

A recurring theme throughout the Government's Response Brief is a procedural objection to litigating Hasbajrami's motion to compel prior to first requiring him to move to withdraw or vacate his guilty plea (either via an amended 2255 motion or a motion brought pursuant to Fed.R.Crim.P. 33). For the reasons that follow, however, the Government's procedural objection should be rejected in its entirety.

As previously discussed, on February 24, 2014, the Government provided the defendant/petitioner, Agron Hasbajrami, with notice, post-sentencing and for the very first time, that "pursuant to 50 U.S.C. §§ 1806(c) and 1881e(a), the government intended to offer into evidence or otherwise use or disclose in proceedings [related to the defendant's prosecution] information derived from acquisition of foreign intelligence information conducted pursuant to the Foreign Intelligence Surveillance Act of 1978 ["FISA"], as amended, 50 U.S.C. § 1881a" (*ecf* #65 at 1, filed under 11 Cr. 623 [S-1] [JG]).

More specifically, the Government's post-sentencing notice alerted the

defendant for the very first time "that certain evidence and information, obtained or derived from Title I or III FISA collection, that the government intended to offer into evidence or otherwise use or disclose in proceedings in this case was derived from acquisition of foreign intelligence information conducted pursuant to [the FISA Amendments Act ["FAA"]," i.e., warrantless FISA surveillance targeting the communications of non-U.S. persons located outside of the United States.

On April 7, 2014, counsel for the Government and the defense met to discuss the manner in which to pursue the litigation of this issue. As the Government is well aware but intentionally omits from its Response Brief, the parties agreed during that meeting that the litigation of the Government's supplemental notice and the effect such would have on the voluntariness of Hasbajrami's guilty plea would begin with discovery motions and only after such were adjudicated would follow with an amended motion made pursuant to 28 U.S.C. § 2255 and/or a motion pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

As a result of this procedural agreement, which was essentially the only thing of substance that the parties could agree upon at the time, on April 9, 2014, defense counsel filed a letter updating this Court on our discussions with the Government and proposing a briefing schedule related to the preliminary discovery dispute (see 11 Cr. 623, ecf #70; see also 13 Cv. 6852, ecf #18 [same]).  Said letter

memorialized the parties' joint proposal, was reviewed in advance by the Government, fully vetted, and edited down from its original form to avoid any potential objections.

Thereafter, on April 10, 2014, this Court adopted the proposed briefing schedule, ruling:

> The schedule proposed in the letter [*ecf* #70/*ecf* #18] is adopted. <u>Any motion to compel shall be filed by</u> June 25, 2014; response by the government shall be filed by July 25, 2014; a reply, if any, shall be filed by August 4, 2014; and argument on the motion shall be heard Friday, August 8, 2014, at 10:30am. <u>If the parties decide that a motion to compel is not necessary, they shall inform the Court in writing by May 22, 2014, so that an alternative case management proposal may be considered.</u>

(Emphasis added).  The submission dates were later extended by both parties but the substance of the order and of the parties' procedural agreement to litigate the motion to compel discovery in the first instance went unchanged.

Indeed, <u>at no point</u> prior to the filing of the Government's Response Brief on August 8, 2014, had the Government ever objected – either formally in writing to this Court or during off-the-record conversations with counsel – to litigating the motion to compel *prior to* a subsequent motion to vacate Hasbajrami's guilty plea (irrespective of whether the motion to vacate his plea would be brought in the context of 28 U.S.C. § 2255 or Fed.R.Crim.P. 33).

This Court's Order specifically provided that "[i]f the parties decide that a motion to compel is not necessary, they shall inform the Court in writing" prior to the submission of Hasbajrami's discovery motion "so that an alternative case management proposal may be considered."   As such, this Court's Order specifically directed either party – including the Government – that if either or both parties no longer wished to litigate discovery prior to any other issue relevant to the Government's supplemental notice, then that party was required to inform the Court in advance of the filing of Hasbarjami's motion to compel so that alternate case management proposals could be considered.  No such request followed.

As a result, the Government's argument that the motion to compel should be dismissed because it preceded any amendment to Hasbajrami's 2255 (and/or the filing of a Rule 33 motion) should be rejected out of hand since the Government failed to raise a single objection to the agreed-upon case management proposal until the filing of its *Response* Brief, which, of course, was filed well after Hasbajrami's motion to compel.

That being said, so there is no confusion, Hasbajrami has made very clear to counsel that he wishes to move to vacate his guilty plea regardless whether additional discovery is ordered by this Court.   It is defense counsel, not Hasbajrami, who believe that discovery should precede the motion to vacate.  We take this position cognizant of the substantial benefits Hasbajrami received as a

result of his guilty plea and in order to ensure effective assistance of counsel under the Sixth Amendment.

Stated simply, we do not believe Hasbajrami should be required to move to vacate his guilty plea until we have had the opportunity to fully evaluate the volume and materiality of the Government's Brady violation.  And to also be clear, we view the Government's failure to provide timely notice of warrantless FAA surveillance as being a fact that is favorable to the defense as defined by Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, but the Brady violation does not end there.  It is not merely the untimely notice that violated the Government's discovery obligations; the evidence derived from the warrantless surveillance as well as the specific manner of surveillance itself is also favorable to the defense in this context.    See discussion, infra, Section III.

Moreover, Hasbajrami has made clear to defense counsel that he is willing to accept the risk that a motion to vacate would have on his case, and indeed it is his desire to pursue such relief, because he would have never pleaded guilty if he had known their was warrantless surveillance in his case.   That is a specific question Hasbajrami had raised with defense counsel prior to the entry of his guilty plea, and Hasbajrami agreed to plead guilty only because he believed – as did defense counsel – that the Government's original FISA notice, dated, September 13, 2011, was a full and complete satisfaction of the Government's requirements under 50

U.S.C. § 1806(c) (i.e., the notice provision of FISA, which is equally applicable to the FAA).

As discussed in Hasbajrami's motion to compel, 50 U.S.C. § 1806(c) provides:

> Whenever the Government intends to enter into evidence or otherwise use or disclose in any trial, hearing, or other proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, against an aggrieved person, any information obtained or derived from an electronic surveillance of that aggrieved person pursuant to the authority of this subchapter, the Government shall, prior to the trial, hearing, or other proceeding or at a reasonable time prior to an effort to so disclose or so use that information or submit it in evidence, notify the aggrieved person and the court or other authority in which the information is to be disclosed or used that the Government intends to so disclose or so use such information.

50 U.S.C. § 1806(c) (emphasis added); see also 50 U.S.C. § 1881e(a) ("Information acquired from an acquisition conducted under section 1881a of this title [i.e., FAA surveillance] shall be deemed to be information acquired from an electronic surveillance pursuant to subchapter I of this chapter for purposes of section 1806 of this title."). Had Hasbajrami – or defense counsel – been aware at the time that the Government had intentionally omitted reference to FAA surveillance (also referred to Title VII or as Section 702), then Hasbajrami would have never agreed to enter a guilty plea.

We note that while the parties had explicitly agreed to delay the filing of Hasbajrami's amended 2255 and/or Rule 33 motions until after his motion to compel had been fully adjudicated, and notwithstanding the fact that the Government failed to provide timely notice to the defense or the Court that it no longer wished to comply with such procedural agreement, to the extent this Court wishes to now modify the case management procedures previously agreed to then we respectfully request that the Court alert the parties so that we may propose a new briefing schedule related specifically to amending Hasbajrami's 2255 and/or filing a motion pursuant to Rule 33.

That being said we do not believe this Court should fall prey to the Government's untimely change of heart. The parties agreed to litigate Hasbjarami's motion to compel prior to his motion to vacate and as such a great deal of work went into Hasbajrami's discovery motion. Rather than wasting resources by requiring the parties to start anew, the Government should be held to its original agreement and its procedural defense to the motion to compel should be rejected in its entirety.

**II.    The Government's claim that it had not considered the possibility that FISA evidence could be derived from FAA surveillance until after Hasbajrami filed his 2255 motion on December 4, 2013, is not credible.**

Another underlying theme of the Government's brief is the feeble argument that the Government only recently recognized that "information obtained or

derived from Title I or Title III FISA collection may, in particular cases [such as here], also be derived from prior Title VII collection, such that notice concerning both Title I/III and Title VII collections should be given in appropriate cases with respect to the same information" (Gov't Response at 7; see also Gov't Response at 24-29 [discussing same]).

In plain language what the Government is claiming is that they only recently realized that the "fruit of the poisonous tree" doctrine could be applied to surveillance of suspected terrorists (i.e., surveillance conducted pursuant to FISA and/or the FAA for use in criminal prosecutions). Such a proposition is hard to reconcile both logically and in view of the number of published opinions to the contrary.

Defense counsel can find "fruit of the poisonous tree" challenges to FISA dating back to 1982. See United States v. Megahey, 553 F.Supp. 1180 (EDNY 1982) (though denying motion based upon facts of the case, examining the "fruit of the poisonous tree" doctrine in the context of FISA surveillance), aff'd sub nom, United States v. Duggan, 743 F.2d 59 (2d Cir. 1984); see also United States v. Belfield, 692 F.2d 141 (D.C. Cir. 1982) (holding that under FISA, any evidence obtained or derived from electronic surveillance may be used in criminal proceeding only if authorization to use information in criminal proceeding is obtained from Attorney General, and if court in which criminal proceeding is

pending *and* "aggrieved person" against whom information will be offered is notified of its intended use).

Indeed, is it reasonable to believe that Federal prosecutors would fail to recognize *or even "consider"* that the derivative fruit of a warrantless FAA surveillance was analogous to the derivative fruit of warrantless searches in any other context?  Maybe if the FAA was not bound by the notice provisions of 50 U.S.C. § 1806(c), then the Government's failure would not be so incredulous. However, since those notice provisions *do apply* to both the FAA and specifically to this case, a fact the Government does not dispute, and since we must assume that the prosecutors in this case have read the statute, we respectfully submit that the Government's purported failure to have not previously "considered" the issue is, at best, willful ignorance stemming from an institutional decision to avoid doing so.

Moreover, it has been widely reported that for at least five years attorneys from the Department of Justice National Security Division ("NSD") have failed to provide notice to criminal defendants of FAA surveillance – despite the express statutory requirement to do so – based upon a narrow and undisclosed interpretation of the law, not due to ignorance as claimed by the Government herein.  See Charles Savage, *Door May Open for Challenge to Secret Wiretaps*, NY Times, October 16, 2013, available at <http://www.nytimes.com/2013/10/17/

us/politics/us-legal-shift-may-open-door-for-challenge-to-secret-wiretaps.html?

pagewanted=1&_r=1&pagewanted=all&> (last accessed, August 30, 2014).

According to these accounts, when the Solicitor General discovered NSD's secret interpretation he reportedly found it legally indefensible.  See id.  In its effort to explain away this past failure, the Government has since made a continuous array of misleading statements.

For instance, the Government has told multiple courts – including this one – that "[u]ntil last year" the Government "had not considered the particular question of whether and under what circumstances information obtained through electronic surveillance under Title I or physical search under Title III could also be considered to be derived from prior collection under Title VII" (Gov't Response at 26) (emphasis added).  That claim, however, is demonstrably false.

This issue was brought to the Government's specific attention at least as early as 2011, when a defendant in United States v. Khan filed a motion devoted to this precise question.  See Mot. to Clarify, No. 11 Cr. 20331 (S.D. Fla. Dec. 14, 2011) (ecf #219, therein).  As the Government's filings show, attorneys from NSD participated in that case, just as they have here.  The issue was raised again in 2012 before the Supreme Court by the plaintiffs in Clapper v. Amnesty International USA, et al., Resp. Br. 58 n.22 (Sept. 17, 2012), 133 S.Ct. 1138 (2013), available at

<https://www.aclu.org/files/assets/amnesty_v_clapper_scotus_brief.pdf>     (last accessed, August 30, 2014).

Moreover, multiple reports indicate that NSD attorneys *had considered* the issue long before 2013, had decided that notice of evidence derived from FAA surveillance was not required, and had taken active steps to avoid ever giving notice of FAA surveillance in criminal cases.  <u>See</u> Charles Savage, *Door May Open for Challenge to Secret Wiretaps*, NY Times, October 16, 2013, available at <http://www.nytimes.com/2013/10/17/us/politics/us-legal-shift-may-open-door-for-challenge-to-secret-wiretaps.html?pagewanted=1&_r=1&pagewanted=all&> (last accessed, August 30, 2014) (explaining that NSD had "long used a narrow understanding of what 'derived from' means" to avoid providing notice); Robert Barnes & Ellen Nakashima, *U.S. Tells Terror Suspect It Will Use Surveillance Evidence*, Wash. Post, October 25, 2013, available at <http://www.washingtonpost.com/politics/us-tells-terror-suspect-it-will-use-surveillance-evidence-setting-up-possible-legal-challenge/2013/10/25/f5e6940c-3dd8-11e3-a94f-b58017bfee6c_story.html> (last accessed, August 30, 2014) ("[T]he solicitor general found out later that Justice Department lawyers did not believe they were required to make such notifications.").

The fact that the Attorney General or Deputy Attorney General had not personally "considered" the issue until 2013, or that the prosecutors in

Hasbajrami's case had not personally done so until 2013 – if that is really what the Government is intending to convey – is no basis for hiding what was, in reality, the controlling view within NSD for years.

### III.    The Government is incorrect to conclude that Hasbajrami's challenge to the voluntariness of his guilty plea will not turn on the lawfulness of Title VII surveillance (i.e., FAA surveillance).

The Government argues that Hasbajrami's putative challenge to the voluntariness of his guilty plea does not turn on the lawfulness of the Title VII surveillance (i.e., warrantless FAA surveillance also referred to as Section 702 collection). We respectfully submit that such conclusion is greatly misplaced.

There is no dispute that Hasbajrami's plea agreement contained a waiver of his right to file a direct appeal or collateral challenge to his conviction. As a result, Hasbajrami may only move to vacate his guilty plea if he can establish that his guilty plea was not entered into knowingly and voluntarily. To make that determination this Court will be required to ask whether Hasbajrami would have entered into his plea agreement had he known that warrantless Title VII surveillance had taken place prior to the Government' application(s) for Title I/III FISA warrants? If this Court agrees that Hasbajrami would not have pleaded guilty *no matter what* had he been given timely notice of the Title VII surveillance, then the Government is correct that the inquiry will end there, Hasbajrami's guilty

plea will be vacated, and he will be free to make any suppression motion that has merit.

However, if this Court determines that Hasbajrami would have merely delayed his decision regarding whether to plead guilty until after defense counsel were in a position to determine the effect the Government's warrantless surveillance would have on his case (i.e., Did the Title VI warrantless surveillance taint all *or only part* of the Title I/III surveillance that followed?), then this Court's examination of Hasbajrami's plea will turn on not merely whether Hasbajrami would have decided to plead guilty had he known that the Government engaged in FAA surveillance of his communications, but also the nature and extent of that surveillance that occurred in his case.

To state it another way, if this Court determines that the untimely notice of FAA surveillance alone is sufficient to warrant the withdrawal of Hasbajrami's guilty plea, then Hasbajrami's guilty plea should be immediately vacated by this Court (pursuant to either Rule 33 or Section 2255) so that the parties may be returned to where they would have stood pre-plea and the instant discovery motion could be adjudicated in that context.  On the other hand, if this Court determines that Hasbajrami's guilty plea should be vacated *only if* he can first establish that the FAA surveillance was unconstitutional *per se* or unconstitutional as applied to this case, then the instant discovery should be ordered as a preliminary matter – as

originally agreed by the parties – so that defense counsel may have available the evidence necessary to fully develop such claims.

To shortcut piecemealed litigation, the parties agreed to litigate the discovery motions prior to Hasbajrami's motion to withdraw or vacate his guilty plea (brought under Rule 33 and/or Section 2255), and as such Hasbajrami needs to know what type of challenge he would have been able to bring had the Government properly fulfilled its notice obligation, and we respectfully submit that he can only get that information through the requested discovery.

We note that FAA surveillance is very complex, much more so than traditional FISA, and the strength of a challenge may depend on how Hasbajrami's communications were collected and queried under the FAA.  Were they collected under the PRISM program or the UPSTREAM program?  Where they acquired through "about" surveillance?  Were they purely domestic communications collected inadvertently?  Who was the target of the collection and did that targeting meet the applicable legal standards?  Since Hasbajrami is a "United States person" as defined by 50 U.S.C. § 1801(i), was he the subject of a backdoor search?[1]  Was the information collected during a period when the NSA was operating its FAA surveillance in violation of FISC-approved rules?

---

[1]     50 U.S.C. § 1801(i) includes within its definition of a "United States person" "an alien lawfully admitted for permanent residence (as defined in section 1101[a][20] of Title 8)."

The Government prevented Hasbajrami from seeking core information about the strength of any suppression motion precisely because it improperly withheld notice required by statute. Given the differences between traditional FISA surveillance and FAA surveillance – and the fact that no court had publicly ruled on the legality of the FAA *at the time of Hasbajrami's plea* – the Government knowingly abused its discovery obligations by failing to provide Hasbajrami with FAA notice prior to the entry of his guilty plea.  As a result, the discovery now requested may in fact become extremely important to this Court's determination of the knowing and voluntary nature of Hasbjrami's guilty plea.

Further, the Government acknowledges that "in extraordinary circumstances where the defendant has been induced to plead guilty by egregious misrepresentations or other serious misconduct, a court may find that the defendant was deprived of his ability to plead guilty voluntarily" (Gov't Response at 21-22, citing, Bousley v. United States, 523 U.S. 614, 619 [1998]; see also Gov't Response at 22 [summarizing Bousley to stand for the principle that "a plea entered by defendant with awareness of the consequences is voluntary unless it is induced by threats or misrepresentation"] [ emphasis added]).  Such is exactly what occurred here, thereby providing Hasbajrami with an additional basis in which to withdraw his plea.

To put it another way, it is not just the fact that Hasbajrami would have insisted on litigating the lawfulness of the FAA surveillance (had he known of its existence at the time) that warrants a finding that his plea was not entered into knowingly and voluntarily, but also the fact that the Government induced Hasbajrami to plead guilty by misleading him (and defense counsel) to believe that warrantless FAA surveillance had not even occurred.

The Government mislead Hasbajrami in two ways: First, it purported to be filing a complete and accurate Section 1806(c) notice when, on September 13, 2011, it provided Hasbjrami with notice that Title I and Title III surveillance had occurred, but failed to include reference to warrantless surveillance under Title VII (i.e., 50 U.S.C. § 1881a) as the Government now acknowledges had been required (see Gov't FISA Notice, dated, September 13, 2011 [ecf #9], at 1-2; see also Gov't Response at 29).  Such misrepresentation by omission did not merely violate the Government's notice requirements, but rather it induced Hasbajrami (and defense counsel) into believing that no such warrantless surveillance had occurred in this case.

Second, the Government's systemic failure in this case and others cemented Hasbajrami's inducement.  The Government failed for five years to provide notice expressly required by statute and by the Due Process Clause, and thereby avoided all challenges to a highly controversial surveillance law.  Such, we respectfully

submit, is most definitely an extraordinary circumstance justifying the withdrawal of Habajrami's guilty plea in this case.

## IV.   The ability to refrain from providing FAA notice was not a benefit agreed to as part of plea negotiations in this case.

The Government argues that one of the benefits of the plea agreement *for the Government* was the agreement that Hasbajrami would plead guilty without first filing a request for discovery (see Gov't Response at 4, 23-24).  Such is true but also highly misleading in the present context since notice of FAA surveillance is not triggered by a Rule 16 discovery request.

To the contrary, 50 U.S.C. § 1806(c) automatically triggers notice "[w]henever the Government intends to enter into evidence or otherwise use or disclose in any trial, hearing, or other proceeding of the United States, against an aggrieved person, any information obtained or derived from an electronic surveillance of that aggrieved person" (emphasis added), not just in cases where a motion for discovery has been filed.

As a result, the freedom from complying with its discovery obligations under Section 1806(c), rather than from having to respond to a motion for discovery made pursuant to Rule 16(a)(1), was not in fact a benefit contemplated by Hasbajrami (or defense counsel) when Hasbajrami's guilty plea was negotiated, and thus is not a valid Governmental defense to the present motion.

**V.     The Government should be required to comply with Hasbajrami's discovery demands by providing a privilege log in relation to any discovery to which it could advance a privilege and by disclosing all information to which no privilege exists.**

The Government's response appears to focus primarily, *if not entirely*, on defense counsel's general background discussion and demands relevant to the eventual challenge to the constitutionality of the FAA, rather than on our specific discovery demands attempting to fully uncover the evidence that was suppressed in this case.   With respect to the former the Government has asserted a blanket deliberative process privilege over all such discovery, which, we respectfully submit, should be resolved with a detailed privilege log.   With respect to the latter, however, no privilege exists.

As such, due to the Government's failure to oppose our *specific* requests, we respectfully submit that at a minimum the following discovery should be ordered:

- Disclose to defense counsel the "foreign intelligence information" referenced in the Government's February 24, 2014 letter.

- To the extent the "foreign intelligence information" referenced in the Government's February 24, 2014 letter includes recordings of or relating to the defendant's prosecution, and to the extent available, provide transcripts – both in the native language and translated into English – of any and all such recordings.

- Identify what "evidence and information" was derived from the warrantless surveillance (i.e., the FAA).

- Identify what "evidence and information" was derived from the warrantless surveillance (i.e., the FAA) that was also thereafter relied

upon in support of subsequent Title I and Title III FISA warrant application relevant to the defendant herein.

- Disclose whether the FAA surveillance relied upon against Hasbajrami intentionally targeted the defendant (see 50 U.S.C. §§ 1881a[b][1], 1881a[b][2]).

- Disclose whether the FAA surveillance relied upon against Hasbajrami intentionally targeted "a United States person reasonably believed to be located outside of the United States" (50 U.S.C. § 1881a[b][3]).

- Disclose whether the FAA surveillance relied upon against Hasbajrami "intentionally acquire[d] any communication as to which the sender and all intended recipients [were] known at the time of the acquisition to be located in the United States" (50 U.S.C. § 1881a[b][4]).

- Disclose whether the Government has any reason to believe that the FAA surveillance relied upon against Hasbajrami were not "conducted in a manner consistent with the fourth amendment to the Constitution of the United States" (50 U.S.C. § 1881a[b][5]).

- Provide copies of all FISA warrants and FISA warrant applications not previously disclosed to the defense in this case.

None of the above discovery demands would require the Government to disclose information protected by the deliberative process privilege, and all are relevant to whether the Government's violation of its notice obligation also resulted in the suppression of additional information or evidence favorable to the defense under Brady *and cognizable under Rule 33 and Section 2255.*

With respect to the more general demands targeting the reasons for the Government's untimely FAA notice, which would be relevant to a constitutional challenges to the FAA itself (both per se and as applied in this case), defense

counsel is greatly concerned that the Government is attempting to hide behind the deliberative process privilege merely to prevent disclosure of information evincing its bad faith and also appears to be relying upon the classified nature of such information as a shield to prevent cleared counsel from effectively representing Hasbajrami.

To be certain, the Government concedes and "does not dispute that the [FAA] notice was untimely" in this case, but argues that "Hasbajrami has not otherwise produced evidence to overcome the presumption that the government in this case acted in good faith" (Gov't Response at 29).  We respectfully submit that Hasbajrami's motion to compel provides more than adequate evidence to overcome the presumption of good faith, particularly when one considers the vast array of information revealed in the newspaper accounts cited therein.  Further, we respectfully submit that the Government's misleading submissions in this case by themselves are sufficient evidence to overcome a presumption of good faith.[2]

However, if what the Government is really arguing is that the defense cannot overcome the presumption because we have not provided this Court with any specific "evidence" beyond citation to newspaper accounts or the inherent violation established by untimely notice itself, such an argument would appear to

---

[2]      For example, if the evidence derived through reliance on warrantless FAA surveillance is identical to the evidence previously disclosed in relation to the subsequent FISA warrant, then Hasbajrami will be able to establish that the suppressed evidence was material to the knowing

completely (and possibly intentionally) fail to recognize the limitations placed on the defense by the designation of such evidence as being classified.

Classified information, under both FISA and CIPA (which was cited by analogy in Hasbajrami's motion), proceeds on a "need to know" basis, and it is the Government (or rather certain agencies of the Government), not the defense, that makes that determination.   Just because the defense is seeking further evidence related to the Government's Brady violation does not mean that a Brady violation has not occurred, nor does it mean that the instant discovery motion is merely a "fishing expedition" as the Government repeatedly posits.   All it means is that those agencies have not authorized the prosecutors to disclose to defense counsel *in this case* the additional evidence we now seek.

Indeed, it is equally possible that those agencies have not even authorized the prosecutors in this case to receive, or be informed of, the existence of the evidence in question.   But that does not mean that other decision-makers from the Department of Justice (or other agencies connected to this case) do not have full knowledge and possession of the material in question.

In an ordinary criminal case, the defense would have the ability to conduct a thorough and independent investigation into every area relevant to the defense, which here would equate to areas relevant to the voluntariness of the defendant's

---

and voluntary nature of his guilty plea.

guilty plea.   Such investigation could include interviews of other attorneys or defendants seeking to discern whether evidence was suppressed in this case, but disclosed in others, which had it been disclosed here might have effected Hasbajrami's decision to plead guilty.   In a non-classified case such investigation is what most often leads to the discovery of Brady violations, since it is extremely rare for a prosecutor to come forward with evidence establishing a Brady violation on his or her own.

In a classified information case, however, the same investigative freedom does not exist.   Indeed, classified information learned by defense counsel in one criminal case cannot be disclosed *even to the prosecutors* of another criminal case unless or until that defense counsel has been given authorization to do so.

To be sure, the limitations on the distribution of classified information provides a significant and important benefit to national security, but at the same time those limitations are also one of the greatest obstacles to establishing governmental misconduct when such occurs in a classified information setting.

Here, the Government has conceded that it has violated the notice provisions of the FAA and that it "understands that it is solely responsible for the untimeliness of the notice in this case" (Gov't Response at 29), and yet the Government continues to refuse to disclose to the defense *the specific evidence* that was derived through such warrantless FAA surveillance.   Such information is not protected by

the deliberative process privilege, goes to the heart of the knowing and voluntary nature of Hasbajrmai's plea, and is also the evidence needed to ordinarily overcome the presumption of good faith.  However, since a determination has not yet been made that we have a "need to know", the Government hides behind FISA as an additional basis for refusing our demands.  Such appears to counsel to be an additional extraordinary circumstance establishing disclosure is necessary and also why this case is unique from any plea withdrawal issue previously adjudicated by this Court (or any other U.S. court to defense counsel's knowledge).

We note that in United States v. Ghailani, 751 F.Supp.2d 498 (SDNY 2010), a case relied upon by both parties, although the court upheld the Government's reliance on the deliberative process privilege it did so only after requiring the filing a detailed privilege log.  See Ghailani, 751 F.Supp.2d at 500.

Additionally, the court (the Hon. Louis A. Kaplan) upheld such privilege even though it determined that the communications were "pertinent" to the underlying issue (Ghailani's impeding Speedy Trial motion), but did so only because the Government did not seek to rely upon the communications in question. See Ghailani, 751 F.Supp.2d at 501.

Here, however, the Government *has* relied upon privileged information by arguing that it did not act in bad faith when it failed to provide Hasbajrami with FAA notice until February 24, 2014 (see Gov't Response at 25-26).  How else

would it be able to make that assertion if it was not aware of the actual reasons for the delay?  Such reliance therefore waives its ability to claim privilege.  As Judge Kaplan explained, "[P]rivilege is waived where a party affirmatively puts its attorney's advice (or other privileged communication) at issue."  <u>Ghailani</u>, 751 F.Supp.2d at 501.  Such is exactly what has occurred here.

## VI.    The Government's claim that there is no new evidence in this case is both misleading and misplaced.

The Government ends its response with the claim that "[t]here is no new evidence in this case, and the Supplemental Notification did not signal otherwise" (Gov't Response at 38).  This claim is perplexing.

In 2011, prior to Hasbjarami's guilty plea, the Government had provided notice that Title I and Title III surveillance had taken place in this case, which means that such surveillance was the result of FISA warrants.  In 2014, post-plea and post-sentencing, the Government gave notice that the Title I and Title III surveillance was itself derived through warrantless Title VII surveillance.  This means that the Government's applications for Title I and Title III FISA warrants had relied upon information that was the product of warrantless searches in Title VII of the FAA.

At a minimum, the revelation the FISA warrant applications themselves had been the product of warrantless FAA surveillance *is* "new evidence in this case". Similarly, while not yet disclosed, the means and methods relied upon during the

warrantless FAA surveillance surely will constitute "new evidence" assuming that this Court orders its disclosure.  Had such been known to defense counsel pre-plea it would have allowed defense counsel to evaluate whether pretrial suppression motions might have been warranted.

Additionally, it is not merely the means and methods of the prior FAA surveillance that would constitute new evidence in this case, but also whatever information was derived as a result of those warrantless searches, assuming there are differences in what was collected without a warrant versus what was subsequently collected with a warrant.  If the Government is now implying, however, that the information obtained without a warrant was identical to the information obtained with a warrant then such revelation is itself "new information" favorable to the accused.  See United States v. Mahaffy, 693 F.3d 113, 127 (2d Cir. 2012) ("Evidence is favorable if it is either exculpatory or impeaching, and it is material if 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' "), citing, Strickler v. Green, 527 U.S. 263, 281-82 (1999), and quoting, Youngblood v. West Virginia, 547 U.S. 867, 870 (2006).

Here, had Hasbajrami been aware pre-plea that all of the information derived from Title I and Title III FISA warrants were in fact the product of warrantless searches and/or warrantless surveillance, there is no question Hasbajrami would

26

have insisted on filing motions to suppress, and also no question that defense counsel would have argued that the Government's conduct was prohibited under the Fourth Amendment.  Indeed, Hasbajrami would have insisted on a suppression motion even if only some, rather than all, of the information was identical or tainted.

## Conclusion

Accordingly, for all of the reasons discussed above as well as those discussed in Defendant/Petitioner Agron Hasbajrami's motion, dated, April 29, 2014, the Government should be directed to disclose to defense counsel all of the discovery requested therein, or at a minimum provide a detailed privilege log so that the Government's claim of deliberative process may be adequately scrutinized.

As stated in Hasbajrami's motion, we respectfully submit that the Government's violation of its statutory notice requirement, coupled with the pervasive Constitutional issues related to Hasbajrami's prosecution and guilty plea, raise serious legal issues on which factual development is warranted in this case. In light of the fact that the Government had previously agreed to litigate discovery prior to requiring Hasbajrami to seek further substantive relief under Section 2255 and/or Rule 33, we respectfully submit that the case management schedule originally agreed to and ordered by this Court should be upheld and not circumvented by the Government's untimely change of heart.

That being said, to the extent this Court now determines that an amended 2255 and/or Rule 33 motion needs to be filed prior to the adjudication of the instant motion for discovery, then we respectfully request that Your Honor so inform the parties so that they may confer and propose a new scheduling order related specifically to such claim for relief.  We note once again that Hasbajrami has specifically informed defense counsel of his desire to move to withdraw and/or vacate his guilty plea regardless of the outcome of the instant discovery motion (notwithstanding defense counsel's advice that such decision should be deferred until after the instant motion has been resolved).  Should the Court determine it necessary for Hasbajrami to file his substantive motion before adjudicating the instant discovery dispute then we respectfully request that counsel be advised so that we may then do so on Hasbajrami's behalf.

Dated:  New York, New York
        September 2, 2014

                              Respectfully submitted,

                              Michael K. Bachrach
                              Steve Zissou

                              *Attorneys for Defendant/Petitioner*
                              *Agron Hasbajrami*