UNITED STATES DISTRICT COURT  
EASTERN DISTRICT OF NEW YORK

ONLINE PUBLICATION ONLY

AGRON HASBAJRAMI,

        Petitioner,

- versus -

UNITED STATES OF AMERICA,

        Respondent.

13-CV-6852

UNITED STATES OF AMERICA

- versus -

AGRON HASBAJRAMI,

        Defendant.

ORDER

11-CR-623

JOHN GLEESON, United States District Judge:

    On April 12, 2012, Agron Hasbajrami pled guilty in his criminal case, No. 11-cr-623, to a single count of providing material support to terrorists.  *See* DE 32.  In January of 2013, I imposed a 15-year sentence, the statutory maximum.  *See* DE 45.  After sentence was imposed, I dismissed three other counts on the government's motion.  *See* DE 44.

    In July of 2013, it appears that Hasbajrami first attempted to file a pro se collateral attack under 28 U.S.C. § 2255.  For reasons that are not clear, the paper filing never reached this Court; after some back and forth, Hasbajrami's § 2255 proceeding was instituted in December of 2013.  Hasbajrami's pro se filing argued only that the statute under which he was convicted is unconstitutionally vague.  Before that claim could be fully briefed and argued, however, the government disclosed new information that has changed the landscape of this case.

On September 13, 2011 – before Hasbajrami pled guilty – the government notified Hasbajrami that its evidence included "information obtained or derived from electronic surveillance and physical searches conducted pursuant to the Foreign Intelligence Surveillance Act of 1978 ('FISA'), as amended, 50 U.S.C. §§ 1801-1812 and 1821-1829." DE 9 ("Initial Notice"). Key to the issue before me now is the government's subsequent supplemental disclosure, via a February 24, 2014 letter, of additional information about the evidence it would have used in Hasbajrami's case had it proceeded to trial. *See* Supplemental Notice, DE 65 in No. 11-cr-623. The Supplemental Notice revealed for the first time that the government's evidence included "information derived from acquisition of foreign intelligence information conducted pursuant to the Foreign Intelligence Surveillance Act of 1978, as amended, 50 U.S.C. § 1881a."

Authority under § 1881a, also known as "Title VII" or "Section 702," was conferred on the government by the FISA Amendments Act of 2008 ("FAA"). In broad terms, those amendments permit the government to gather an array of information from electronic communications made by people located outside the United States who are neither citizens nor legal permanent residents of the United States. *See* 50 U.S.C. §§ 1881a (grant of authority), 1801(i) (definition of "United States person"). In public debate, FAA intelligence has been described as "warrantless wiretap" information, since, in contrast to traditional FISA authority, the FAA does not require an individual court authorization (that is, a warrant) for each data collection. *See, e.g.,* Charlie Savage, "Federal Prosecutors, in a Policy Shift, Cite Warrantless Wiretaps as Evidence," N.Y. Times, October 26, 2013.

Following the Supplemental Notice (and before taking any action on Hasbajrami's pro se § 2255 petition), I reappointed counsel for Hasbajrami. *See* Unnumbered Order, March 13, 2014, in No. 13-cv-6852. Hasbajrami's attorneys sought additional

2

information from the government about the FAA wiretaps, but the parties could not mutually agree on whether any specific material should be turned over. After failing to obtain any material on consent, Hasbajrami moved to compel. I held argument on the motion on September 12, 2014, and denied Hasbajrami's motion on the record.

In discussing Hasbajrami's discovery motion, however, it became clear that his 2012 guilty plea presents a significant barrier to many of the arguments he might present to challenge his conviction. Therefore I directed Hasbajrami to file a letter informing the Court whether (as suggested by his counsel at argument) he wishes to withdraw his guilty plea in light of the Supplemental Notice and any other developments in the case. By letter from counsel dated September 20, 2014, Hasbajrami confirmed that, contrary to his attorneys' advice, he wishes to withdraw his plea. *See* DE 84 in No. 11-cr-623.

Hasbajrami's guilty plea presents a serious obstacle to his ability to collaterally attack his conviction:

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

*United States v. Broce*, 488 U.S. 563, 569 (1989). In *Broce* and other cases, the Supreme Court has made clear that a guilty plea generally extinguishes claims of any "antecedent constitutional violations." *Tollett v. Henderson*, 411 U.S. 258, 266 (1973).

There are two well-recognized exceptions to the general waiver principle. First, as outlined in the excerpt from *Broce*, the defendant may argue that the plea was not voluntary (for example, obtained by threat) or that the defendant did not know the consequences of

3

pleading guilty (for example, the defendant was misled about the possible punishments he would face). But the bar is high: "[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances – even though the defendant may not know the *specific detailed* consequences of invoking it." *United States v. Ruiz*, 536 U.S. 622, 628-30 (2002) (emphasis in original). Thus, courts will usually hold enforceable a criminal defendant's waiver of his right to additional disclosures by the government,[1] as long as the defendant understands prior to his waiver the sorts of material he would generally be entitled to if the case went to trial. *See Ruiz*, 536 U.S. at 629-33 (government was not required to turn over potential impeachment material to defendant prior to guilty plea).

Second, in rare cases, a conviction may be collaterally attacked notwithstanding a guilty plea where "on the face of the record the court had no power to enter the conviction or impose the sentence." *Broce*, 488 U.S. at 569. The most notable recent examples include criminal defendants who pled guilty to a violation of 18 U.S.C. § 924(c) based on a reading of the law later held to be erroneous in *Bailey v. United States*, 516 U.S. 137, 144 (1995). Later, some petitioners whose offense conduct appeared not to violate the statute (as construed by *Bailey*) were permitted to withdraw their pleas on the theory that they simply had not committed a criminal act. *See generally Bousley v. United States*, 523 U.S. 614 (1998). Perhaps Hasbajrami's pro se argument (that the statute under which he was convicted is unconstitutionally vague) could be thought to fall into this category, but here too he would face great difficulty. *Cf. United States v. Yousef*, 750 F.3d 254, 260 (2d Cir. 2014) (holding that the defendant's plea agreement waived a challenge to extraterritorial application of the material support statute).

---

[1] Hasbajrami waived additional disclosures in this case. *See* Final Plea Agreement ¶ 4.

4

The parties also appear to agree on a third exception: "in extraordinary circumstances where the defendant has been induced to plead guilty by egregious misrepresentations or other serious misconduct, a court may find that the defendant was deprived of his ability to plead guilty voluntarily." Govt. Br. 21-22, DE 25 in No. 13-cv-6852 (citing *Bousley*). This theory derives from a reading of the Supreme Court's opinion in *Brady v. United States*, 397 U.S. 742 (1970), where the Court wrote that a knowing and voluntary guilty plea "must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Id.* at 755 (quoting *Shelton v. United States*, 246 F.2d 571, 572 n. 2 (5th Cir. 1957) (*en banc*), rev'd on confession of error on other grounds, 356 U.S. 26 (1958)). Recent applications of this exception include *United States v. Fisher*, 711 F.3d 460, 465-66 (4th Cir. 2013) and *Ferrara v. United States*, 456 F.3d 278, 290 (1st Cir. 2006). Both *Fisher* and *Ferrara* involved egregious governmental conduct: in *Fisher*, a DEA agent lied about the source of information used to obtain a warrant as part of a larger pattern of self-enriching criminal activity, *see* 711 F.3d at 463; and in *Ferrara*, members of the prosecution knowingly withheld and then manipulated evidence that the defendant had not ordered a murder he pled guilty to committing, *see* 456 F.3d at 281-86. In independently researching this question, I have not found any Second Circuit decisions citing either *Fisher* or *Ferrara* with approval, nor any other recent Second Circuit case with such an expansive interpretation of the relevant language from *Brady v. United States*. Indeed, I am not convinced that *Ferrara*, and especially *Fisher*, were correctly decided, or that the government is correct to concede that *Brady v. United States* should be read so broadly. But I defer to the able prosecutors arguing the government's case and decide the

motion on the terms on which it has been presented – which does not require me to address the legal merits of the third exception.

Rather, I will permit Hasbajrami to withdraw his plea of guilty because I conclude that he was not sufficiently informed about the facts. Under the precise circumstances presented here, and because of a DOJ policy that transcended this case, Hasbajrami could not have made an intelligent decision about whether to plead guilty: When the government provided FISA notice without FAA notice, Hasbajrami was misled about an important aspect of his case.

The government's Initial Notice informed Hasbajrami that the prosecution's evidence included material obtained through FISA-authorized wiretaps. This notice was made pursuant to FISA's notice provision, which states in full as follows:

> Whenever the Government intends to enter into evidence or otherwise use or disclose in any trial, hearing, or other proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, against an aggrieved person, any information obtained or derived from an electronic surveillance of that aggrieved person pursuant to the authority of this subchapter, the Government shall, prior to the trial, hearing, or other proceeding or at a reasonable time prior to an effort to so disclose or so use that information or submit it in evidence, notify the aggrieved person and the court or other authority in which the information is to be disclosed or used that the Government intends to so disclose or so use such information.

50 U.S.C. § 1806(c). Notably, it is not clear from this section exactly *when* the government must provide notice (though it must be "prior to" the proceeding or the use of the information). That uncertainty matters a great deal in our current federal criminal environment, since the vast majority of defendants plead guilty, and § 1806(c) does not clearly state whether the government must provide FISA notice before a guilty plea. But under the facts presented here, I need not decide when the government's legal obligation to provide notice (whether under § 1806(c) itself, or some other legal authority, such as due process) attaches – whether, for example, the

government must as a matter of law *always* provide FISA notice before a defendant pleads guilty. That is because, whatever the legal requirement, the government actually provided the FISA notice in this case before Hasbajrami pled guilty. And the FAA expressly incorporates the exact same FISA notice requirement: it states that "[i]nformation acquired from an acquisition conducted under section 1881a of this title shall be deemed to be information acquired from an electronic surveillance pursuant to subchapter I for purposes of section 1806 of this title . . . ." 50 U.S.C. § 1881e(a).

Since FISA and the FAA are governed by precisely the same notice requirement, the government's provision of FISA notice without FAA notice gave the overwhelming – and false – impression that no FAA-obtained information figured in the government's case.

The issue now is whether that misimpression forms a sufficient basis for Hasbajrami to withdraw his plea. Though it is a close question (as the government itself described it at oral argument), I conclude that Hasbajrami should be permitted to withdraw his plea.

First, at oral argument, Hasbajrami's counsel represented that, prior to his decision to plead guilty, Hasbajrami had specifically asked them about whether warrantless wiretaps had played a role in his case. After they informed him that such wiretaps were not part of the evidence, he was more willing to plead guilty. Thus, Hasbajrami seems to have been misled about a fact he considered important in deciding how to plead.

Second, his interest is not simply idiosyncratic. Warrantless wiretapping has been controversial, and due in part to the since-revised nondisclosure policy that operated in this very case, there have been few rulings on the practice's legality. I emphasize that I express no view whatsoever on the legal merits of a constitutional challenge to the FISA amendments. But at a

minimum, it is the kind of argument that a criminal defense attorney would want to make in this sort of case.

The government's misleading pre-plea notice in this case prevented Hasbajrami from knowing about the availability of this legal argument. Hasbajrami could hardly have been expected to file a motion attacking the FAA without having any factual basis to support a claim that warrantless wiretapping had played a role in his case. Indeed, the compelling inference from the notice he received was that surveillance pursuant to the FISA Amendments had *not* occurred.

This highlights a critical point: Hasbajrami *could not* have challenged the FAA without government notice; the argument's availability depended on *facts* exclusively under the government's control. In the course of pretrial proceedings, the government is not required to advise defendants about potential legal challenges they might make – the prosecutor need not ask a defendant prior to plea if he has considered whether the criminal statute under which he is charged exceeds Congress's authority under the Commerce Clause, for example. But here, the legal argument Hasbajrami might have made was predicated on a fact that he could not have known without government disclosure.

Third, even if Hasbajrami cannot make a facial challenge to the FAA, it is also possible that the revelation of the role FAA material played in the government's investigation will lead to new fact-specific challenges to the evidence that the government would have used in this case. Hasbajrami might seek to suppress the FISA-obtained evidence not because the FAA is unconstitutional in general, but because of some other infirmity in its application to this particular case. I am in no position to articulate, let alone prejudge the merits of, such a challenge. But this is another reason why the belated Supplemental Notice should result in an order permitting Hasbajrami to withdraw his plea.

For these reasons, Hasbajrami's § 2255 petition, as modified by his request for a vacatur of his sentence and guilty plea, is granted,[2] and No. 13-cv-6852 is closed.[3] The criminal case, No. 11-cr-623, is reopened, and a status conference will be held on Wednesday, October 15, 2014 to discuss the next steps in that case.

So ordered.

John Gleeson, U.S.D.J.

Dated: October 2, 2014
      Brooklyn, New York

---

[2] As should be clear, I do not rule on the merits of Hasbajrami's pro se challenge to the constitutionality of the material support statute; that argument is mooted by the successful withdrawal of his guilty plea.

[3] I ordered the parties to file their papers in both the criminal case and the collateral attack, but it is clear that at this stage, Hasbajrami may not withdraw his plea based on a motion within the criminal case. *See* Fed. R. Crim. P 11(e) ("After the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack.").